[Moore *v.* The Philadelphia, Wilmington & Baltimore R. R. Co.]

does not pay there is nothing to apportion. No question of apportionment can be raised until there is actual payment of the interest, and when payment is made the question whether it was a voluntary or a forced payment has no bearing upon the principle of apportionment.

Nor is there any question about government policy or treasury convenience. This was clearly shown by Judge KING in Earp's Will, supra, where he said: "It is a mistake to suppose that the rule in equity had any original connection with government policy or treasury convenience. From the time of its establishment by Lord HARDWICKE, in 1744, such an idea is not intimated in any decided case. And this for the simple reason that the treasury had no interest in the subject." Judge KING then proceeds to give what he conceived to be the reason of the rule in equity. It was substantially that the funded debt carries with it the idea of permanency, and becomes a favorite investment with persons desirous of having a fixed income; that the interest of such investments may be applicable to a series of persons for a long time. These may be very good reasons to induce persons who desire permanent investments to buy such securities, and perhaps why the income of English consols and South Sea annuities should not be apportioned, as the interest thereon does not accrue from day to day. But the interest on these municipal and corporation bonds does accrue *de die in diem* precisely as in the case of an ordinary bond and mortgage, and we are wholly unable to distinguish one from the other in principle. The applicability of this rule to federal and state securities will be decided when the cases arise; they have been referred to here only for the purpose of illustration, and in so far as such allusion was necessary to a proper discussion and understanding of the case before us.

The decree is affirmed and the appeal dismissed at the costs of the appellant.

# Moore *versus* The Philadelphia, Wilmington & Baltimore Railroad Co.

1. A upon coming to a public railroad crossing saw a train passing upon one of the several tracks. He stopped and looked both ways and not seeing any other train approaching, took his position between two tracks waiting for the train to pass. While standing there an engine came along the track behind him, tender foremost, and struck him. There was a clear view of the track for half a mile in the direction from which the engine came. A. testified that no bell was rung or whistle blown

[Moore *v.* The Philadelphia, Wilmington & Baltimore R. R. Co.]

on the engine, and that he did not see nor hear its approach. There was no other testimony on this point. In an action by A. against the company a compulsory nonsuit was granted:

*Held* that there was no error. It was negligence *per se* for A. to stand between the tracks while the train passed.

2. If the engineer under the above circumstances saw A., it was his duty to give warning and his failure to do so was negligence. But in the absence of evidence that he did actually see A., or that he was approaching the crossing at an improper rate of speed, negligence could not be imputed to him. A. had voluntarily placed himself in a position of known danger and it was his duty to be vigilant.

3. While it is true that an engineer has no right to wilfully run over a man; yet where he sees a person on or near the track in a position of danger he has the right, in the absence of contrary evidence, to suppose that such person is in possession of his faculties, and that he will step off of the track and avoid injury.

January 16th, 1885.    Before MERCUR, C.J., GORDON, PAXSON, TRUNKEY, and GREEN, JJ. STERRETT and CLARK, JJ. absent.

ERROR to the Court of Common Pleas, No. 1, of *Philadelphia county :*    Of January Term, 1884, No. 311.

Case, by Alexander Moore against the Philadelphia, Wilmington & Baltimore Railroad Co. to recover damages for bodily and mental injuries received by the plaintiff, through the alleged negligence of the defendants' servants.

On the trial the following facts appeared from the plaintiff's evidence :—The plaintiff was injured at a public railroad crossing at Thirty-First Street and Gray's Ferry Road, Philadelphia. As he approached the crossing in daylight on a clear day, he stopped and looked in both directions and saw nothing approaching except a passenger train which was just reaching the crossing on the track furthest from him. He crossed the first track and waited there between two tracks for the passenger train to pass. While standing in this position one of defendants' engines with the tender foremost came down the track which he had just crossed, and struck the plaintiff injuring him severely.

Plaintiff testified, inter. alia, as follows : " I got between the two tracks and waited for the passenger train to go past. An empty engine backed upon the other track, and struck me. That was while I was waiting for the passenger train to pass. I didn't see the engine backing up. There was no notice given of it. There was no whistle blown or bell rung. I didn't see the engine when I went to cross. I didn't see it at all. I looked down and up, both. I saw one passenger train and waited for it to pass. The other one I didn't see at all. I didn't hear it at all. The engine struck me in the left side and over the left eye—the brow."

[Moore *v.* The Philadelphia, Wilmington & Baltimore R. R. Co.]

It was also given in evidence that from the place where plaintiff stood, between the tracks, there was a clear view of the track for half a mile in the direction from which the engine came.

Upon this evidence the judge granted a compulsory nonsuit which upon argument the court refused to take off; whereupon the plaintiff took this writ assigning for error the refusal of the court to take off the nonsuit.

*Richard P. White,* (with whom were *Henry J. Scott* and *George H. Earle, Jr.*), for plaintiff in error.—Even if it should be conceded that the plaintiff was guilty of negligence in taking the position which he did between the tracks, yet if the injury might have been avoided by the use of ordinary care and caution by the railroad company, they are liable for damages: Wharton on Negligence, 2d ed., §§ 388, 329 and 325; Reeves *v.* Railroad, 30 Pa. St., 461; Gray *v.* Scott, 66 Id., 347; Brown *v.* Lynn, 31 Id., 513; Railroad *v.* Ogier, 35 Id., 60; Helmrich *v.* Hart, 16 N. Y. Wk. Dig., 356. But plaintiff's conduct was not negligent: New Jersey etc., *v.* West., 32 N. J., 91; Company *v.* Stead, 95 U. S., 168; Railroad *v.* Troutman, 11 W. N. C., 455; and see Railroad *v.* Trainor, 33 Md., 543. All of the authorities cited apply with special force to accidents at public crossings, where a pedestrian has a right to go upon the tracks and where the companies are bound to exercise special care.

*Gavin W. Hart,* (with whom was *David W. Sellers*), for defendants in error.—A traveller approaching a railroad track is bound to use his eyes and ears so far as there is an opportunity, and where by the use of these organs danger may be avoided. *Notwithstanding the neglect of the railroad company's servants to give signals,* the omission of the plaintiff to use his senses to avoid danger is concurring negligence: Henze *v.* R. R.,71 Mo. 636; R. R. *v.* Houston, 5 Otto, 702.

Standing between two tracks of a railroad and not keeping watch for approaching trains constitutes contributory negligence: Snell *v.* R. R., 1 Com. Pleas Reporter, 24; Opinion of MORROW, P. J., (Bradford Co., Pa.); Anderson *v.* R. R. Co., 12 Phila., 369, (FINLETTER, J.)   Where an engineer sees an adult upon the track, he is entitled to suppose that such person is in possession of his senses and will step off the track before the train reaches him: Louisville & N. R. R. Co., *v.* Cooper's Exr., 6 Am. & Eng. R. R. Cas., 5; Herring *v.* W. & R. R. Co., 10 Ired. (N. C.) 402; Manly *v.* Wilmington & W. R., 74 N. C., 655.

Mr. Justice PAXSON delivered the opinion of the court, March 2d, 1885.

The plaintiff was nonsuited below. He was injured by an engine of the defendant company while attempting to cross their track at a public crossing. When he came to said crossing he saw a train passing upon one of the tracks, of which there were several. He looked up and down the road and seeing no other train approaching, he stepped upon the road and stood between the tracks waiting for the train to pass. While in this position an engine came along and struck him. He had a clear view of the track for half a mile in the direction from which the engine came, and could have seen it had he looked at the right time. His attention was doubtless given to the passing train, and as the engine was not on the track when he stepped thereon, he probably expected to cross before another train or engine should pass. This was unfortunately a mistake and resulted in his injury. He says in his testimony : " I got hit by standing too near the track, I guess."

At railroad crossings there are reciprocal duties. Both the company and the public have a right of way; neither is exclusive. It is the duty of each to so exercise their respective rights as not to interfere unnecessarily with the rights of the other. A crossing is a known place of danger. The engineer of a train when he approaches it has a right to expect that persons may be there, hence it is his duty to approach it at a moderate rate of speed; the citizen when he attempts to cross knows that a train may come at any moment. It is his plain duty to look out for it and avoid it if possible. The train is not obliged to stop : he is.

There was no evidence to show that the engine approached at a high rate of speed. It was urged, however, that the engineer might and ought to have seen the plaintiff and that his failure to stop or at least blow the whistle or ring the bell was negligence. The plaintiff says " there was no whistle blown or bell rung." There appears to have been no other evidence upon this point. We must assume that he did not hear it for if he had he would not have waited to be run down. It is equally probable, however, that his attention was so taken up by the passing train that he did not notice either whistle or bell. We are asked to assume that the engineer saw him because it was his duty to have done so, and there was nothing to have prevented it. If we are to depend upon presumptions we must apply them to both sides. If it was the duty of the engineer to have seen the plaintiff standing upon the track close to the passing train it was also the duty of the plaintiff to see the approaching engine. And certainly it was

quite as easy for the plaintiff to see the engine as for the engineer to see the plaintiff. The view of each was unobstructed. The plaintiff was standing at a place of known danger; the engine was approaching it. The duty of each was plain; to be vigilant; to be on the alert. If the engineer saw the plaintiff it was his duty to give warning, and if he did not do so it was negligence. More than this, if he is approaching at a proper rate of speed he is not bound to do. He has a right to suppose that a person upon the track is in full possession of his faculties, and that he will in the event of danger step from the track and avoid it; that unless there is brought to the attention of the engineer some fact from which he can see that the person upon the track cannot get off, he has a right to believe that he will use his senses and clear the track: Herring v. W. & R. R. Co., 10 Iredell, 402; Manly v. Wilmington & W. R., 74 N. C., 655; Louisville & N. R. R. v. Cooper's Executor, 9 Am. & Eng. R. R. Cas., 5.

Of course a man may not be wilfully run down and killed or injured, even if he be a trespasser upon the track. Such a doctrine would not be tolerated for a moment in any civilized country. But there was nothing of the kind here. The most that can be claimed is that the engineer was negligent in not giving proper warning of his approach. Conceding such negligence, how does it affect the case?

The plaintiff was standing at a place of known peril; so clearly so, that we must declare it as a matter of law. He ought not to have stepped upon the track until his passage was clear. It was negligence per se to stand between the tracks while the train passed. There was no necessity for his doing so, and having done so, it was clearly his duty to be vigilant and look out for an approaching train. As before stated he had a clear view of the track for half a mile, but unfortunately he was looking at the passing train instead of up the track. This was negligence on his part, and such negligence that without it he would not have been injured.

The case is ruled by Carroll v. The Pennsylvania Railroad Co., 12 W. N. C., 348. The facts are almost identical, and this court said: "The injury received by the plaintiff was attributable solely to his own gross carelessness. It is in vain to say that he looked and listened, if in despite of what his eyes and ears must have told him, he walked directly in front of a moving locomotive."

There the plaintiff stepped in front of a moving locomotive; here he stood still between the tracks until a locomotive which he might have seen for half a mile, ran over him.

A number of cases have been cited which have little appli-

cation, and we do not regard a discussion of them necessary. Their facts are essentially different.

Much as we deplore the injury which the plaintiff has received, we cannot see our way clear to say that the court below erred in entering a nonsuit.

Judgment affirmed.