'THE PENN. R. CO. v. MARIA E. BELL.

ERROR TO THE COURT OF COMMON PLEAS OF LANCASTER COUNTY.

Argued May 18, 1888—Decided October 1, 1888.

Where a person about to board a railroad train at night, was warned of its approach to the station, could have heard it and could have seen its head-light for a long distance, but walked to the edge of the platform and was struck by the locomotive, he is chargeable with contributory negligence, whether intoxicated or not, and no recovery may be had for the injury received.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 185 July Term 1887, Sup. Ct.; court below, No. 28 December Term 1884, C. P.

On December 1, 1884, an action in case was brought by Maria E. Bell against the Pennsylvania Railroad Company, to recover damages for injuries to her husband John Bell, resulting in his death, alleged to have been caused by the negligence of the defendant company.

Statement of Facts.

At the trial on April 23, 1887, the facts made to appear were in substance as follows:

On Monday, January 21, 1884, John Bell, the plaintiff's husband, and Robert Gibson, took the 9:10 P. M. train from Philadelphia to Lancaster, the place of their residence. They both had been drinking. The approach of the train to Lancaster was announced, and the conductor as he passed through the car spoke to Gibson who said he would get Bell off at the station. After stopping the usual time at Lancaster, the train passed on and the conductor found Bell and Gibson still in the cars. Gibson explained that when he had awakened Bell he got angry and that he had not been able to get him off, when the conductor said he would let them off at Landisville. The train reached Landisville about 11:15 P. M. when Bell was removed from the train and carried to the platform in front of the station. Gibson got off himself, and the two were left there. They afterwards went into the waiting room.

At Landisville the Reading & Columbia railroad crosses the Pennsylvania railroad at grade. The station building, used for both roads, stands in the angle south-east of the crossing, and is about 12 feet from the defendant company's tracks, and about 24 feet from the tracks of the Reading & Columbia railroad. The space between the station building and the tracks of both roads is covered with planking. This planking on the south side of the defendant company's tracks extends 393 feet west of the station door and 355 feet east of it. Beyond the crossing from the station and in the south-west angle of the crossing, stands a watch-box, which is 7 feet 2 in. from the defendant company's tracks and 35 feet 5 in. from the station building. The defendant company's road is a straight line for about 2400 feet west of the station and for some distance east of it. Opposite the watch-box was a signal light over the tracks, fifteen or twenty feet from the ground, showing either a red light or a white light. There were other lights about the watch-box and at the station building, and there was a little snow upon the ground.

Bell and Gibson had been drinking in the waiting room, Bell being much under the influence of liquor; the operator spoke to them about it, and they went outside. When, about 11:30 P. M., the operator heard the approaching east-bound train,

he looked out to the place where he had set the signal for the train to stop, and saw Bell and Gibson both on the platform. The whistle and the bell of the train were sounded; the head-light of the locomotive threw the light 300 feet or more along the track, and the head-light was visible for more than 2300 feet from the station. The engineer saw the signal light and as he slowed up to stop, Bell and Gibson walked with linked arms westward from where they had been standing, and when they were at or near the Reading & Columbia tracks, they got close to the track upon which the train was approaching, and Bell was struck by a projecting part of the engine. The train stopped within about 20 feet from the place of the accident. Bell was taken to his home in a sleigh and died on February 7th following. The testimony as to whether or not the approaching train was seen or could have been seen, sufficiently appears in the Opinion of the Court.

The court, Patterson, J., after reviewing the testimony charged the jury as follows:

Now, gentlemen, these are facts for your consideration. [Was it the head-light just passing, shining into his face that blinded the man?] [18] Was it the extreme darkness after the engine passed, or was it his condition, being drunk, that led him into a place of danger? You must consider all these questions; also, consider the testimony as to how much light there was on the plank or boardwalk to enable a passenger to see where he was going.

We must now ask who, which party, John Bell or the Pennsylvania Railroad Co., or their agents or employees, was guilty of negligence, or was either or both of these parties guilty of negligence. If the facts show to your satisfaction that both parties were negligent, then there would be contributory negligence, and the plaintiff can't recover. "Negligence is the absence of care (the want of care), according to the circumstances." The question of negligence is a question of fact, and therefore is properly left to the jury. We leave that question to you. You gentlemen must, from all the evidence in the case, find and determine whether or not there is negligence on the part of the railroad company.

The testimony in this case is variable, it is contradictory; the facts are disputed, and the Supreme Court holds that

where there is any evidence which alone would justify an inference of the disputed fact or facts, it must go to the jury, no matter how strong or persuasive may be the countervailing proof. The disputed facts in this case are, that there was no contributory negligence on the part of John Bell, and further that there was no negligence whatever on the part of the railroad company. Those facts are for you to determine, gentlemen, under all the evidence submitted to you.

From all we have said, you may be satisfied that it is entirely right and competent for the defendant, the railroad company, to show the unfortunate victim's negligence in putting himself in a place of danger. Has it been shown to your satisfaction that John Bell contributed to this accident, and to his injury and death which ensued? If contributory negligence on the part of the plaintiff, that is John Bell, has been shown to your satisfaction, then this plaintiff cannot recover in this suit, and your verdict should be for the defendant. [If the evidence in the case satisfies you that the defendant, the railroad company, or its conductors and agents, have been guilty of negligence, such negligence under the peculiar circumstances developed by the evidence as to cause or contribute to this accident, then the plaintiff can recover, and your verdict should be in favor of the plaintiff.] [14]

Now, you, gentlemen, are the body to fix as well the loss or amount of damage, as to determine the party which occasioned it; and if you find for the plaintiff, Maria E. Bell, we have only to say that the damages for death by negligence are the pecuniary loss sustained by the party entitled to maintain the action. The amount of damages is for the jury.

We will now answer the, points submitted by the counsel and then leave the case with you.

The defendant has requested the court to charge the jury:

*       *       *       *       *       *       *       *

4. It was the duty of John Bell to look out for the approaching train, and, if his eyes and ears were good, to see and hear it, and if he failed to do either, when the train was where it could be seen or heard, and if he failed to see the head-light of the locomotive, when it was in full view from the station and approaching the station, and if by reason of his failure to see or hear the approaching train, he was injured as the result of

such failure, he was guilty of contributory negligence, whether he was sober or drunk, and no recovery could be had in the case by the plaintiff.

Answer: We answer this point, qualified as follows: That it was his duty to look out for the expected train; the defendant's agents having told him, they would return him to Lancaster—to look, and see, and hear it, if his eyes and ears were good, and if he failed to see the head-light of the locomotive, if no object intervened between him and the train, and of that the jury must inquire and determine—if he failed to see and hear the approaching train, on account of his own carelessness and neglect, then if you find that the failure to see and hear the train contributed to negligence, for you alone are the judges of that, then, whether he was sober or drunk, no recovery can be had in this case by the plaintiff.[9]

5. There is no evidence in the case that John Bell either stopped, looked or listened for the approaching train, and no evidence that he used his senses, or made any effort to see or hear the approaching train; therefore the plaintiff has no cause of action, and there can be no recovery in this case by the plaintiff.

Answer: We decline to affirm this point; the jury is to find and determine whether there is no evidence, and whether there is evidence, such as mentioned in the point.[10]

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

The jury returned a verdict in favor of the plaintiff for $5,000. A rule for a new trial having been discharged, judgment was entered on the verdict, when the defendant took this writ assigning among other errors:

9, 10. The answers to the defendant's points.[9] [10]

13, 14. The parts of the charge embraced in [ ] [13] [14]

*Mr. H. M. North* (with him *Mr. E. D. North*), for the plaintiff in error:

1. If one be injured whilst attempting to board a train with intent to become a passenger thereon, the liability of the company will be measured by the same principles of law as if such person were merely a traveler crossing a track where he had the right to cross; it will become a question of negligence on the part of the company and of ordinary care on the part of

the plaintiff : 1 Rorer on Railroads, 488. As the injury was received before the passenger had placed himself in the carrier's hands, the mere fact of injury was not enough to make out a prima facie case ; the burden remained upon the plaintiff to show negligence of the defendant or of its servants : Stager v. Pass. Ry. Co., 119 Pa. 70 ; McClintock v. Penn. R. Co., 21 W. N. 133 ; Hayman v. Penn. R. Co., 118 Pa. 508.

2. The injury received by the plaintiff was attributable solely to his own carelessness. It is in vain for a man to say that he looked and listened, if, in spite of what his eyes and ears must have told him, he walked directly upon the moving locomotive : Carroll v. Penn. R. Co., 12 W. N. 348 ; Beach, Cont. Neg., 21 ; Monongahela City v. Fischer, 111 Pa. 9 ; Mulherrin v. Railroad Co., 81 Pa. 366 ; Moore v. Railroad Co., 108 Pa. 349. The fact that the plaintiff was intoxicated at the time of the injury will not relieve him from the consequences of his contributory negligence : Wharton on Neg., §§ 332, 402 ; Wynn v. Allard, 5 W. & S. 524 ; Beach, Cont. Neg., 204, 392, 393, 398 ; Patterson's Ry. Acc. Law, 259 ; Shear. & Redf. on Neg., § 487 ; 2 Rorer on Railroads, 957, 958 ; 2 Wood's Ry. Law, 1035.

*Mr. Thos. Whitson* and *Mr. Marriott Brosius* (with them *Mr. A. F. Shenck*), for the defendant in error :

1. The relation of carrier and passenger begins when the passenger has been accepted as such by the railroad company and has entered upon its premises · Patterson's Ry. Acc. Law, §§ 213, 219 ; and the company is liable for injuries resulting from its failure to adequately light its stations and platforms : Patterson's Ry. Acc. Law, §§ 251–253 ; Archer v. Railroad Co., (N. Y.) 9 Cent. R. 233.

2. The object of the defendant in the part of the defence that Bell was intoxicated at the time of the injury, was to help out its proof of contributory negligence. But, while endeavoring to escape one, the defendant was impaled upon the other horn of the dilemma ; for, if the plaintiff were intoxicated and unable to take care of himself, and the company undertook to carry him in that condition, they were bound to take care of him : Patterson's Ry. Acc. Law, §§ 77, 278 ; Pittsburgh etc. R. Co. v. Hinds, 53 Pa. 512 ; Pittsburgh etc. R. Co. v. Pillow, 76 Pa. 510.

3. In the ninth and tenth assignments, the defendant takes the same position insisted on so strenuously in Schum v. Railroad Co., and which the court said was ingenious but not sound. The circumstances which characterize this accident are overlooked. " The relative position of the man and the engine has been fixed by no one until the moment of the accident, and the whole subject of the decedent's duty is thus left open to conjecture and discussion : " Schum v. Railroad Co., 107 Pa. 8. The court rightly adhered to the well-established rule, that whenever the standard of duty shifts with the facts and circumstances developed at the trial, the question of negligence cannot be determined by the court, but must be submitted to the jury: Schum v. Railroad Co., 107 Pa. 8; Penn. R. Co. v. Peters, 116 Pa. 206.

OPINION, MR. JUSTICE GREEN :

We think this case comes clearly within our decision in the case of Carroll v. Penn. R. Co., 12 W. N. 348. We there held that a person who was about to cross a railroad track, stepped upon the track and was struck by a passing engine, could not recover, although he testified that before stepping on the track he stopped and looked and listened, but neither saw nor heard any approaching train. Other witnesses for the plaintiff testified that they saw the approaching train which struck the plaintiff, and that he could have seen it from where he said he stopped and looked. A compulsory nonsuit was entered, and on writ of error taken by the plaintiff, the judgment was affirmed. We said, " The injury sustained by the plaintiff was attributable solely to his own gross carelessness. It is in vain for a man to say that he looked and listened if, in despite of what his eyes and ears must have told him, he walked directly in front of a moving locomotive."

In the case of B. & O. R. Co. v. Schwindling, 101 Pa. 258, a boy between five and six years old was standing upon the edge of a platform so close that he was struck and injured by the projecting step of a passing car. We held there could be no recovery because " the plaintiff had no right to place himself in the position in which it was possible for him to be injured in such a manner, and the defendant was not bound to take precaution against such injury."

In the present case, if the deceased had been between the rails at the time he was struck, he would have been precisely in the position of the plaintiff in the case of Carroll. But, although not between the rails, he was so close to them, that he was struck by some part of the approaching car, and he had no better right to place himself in such close proximity to the track than to stand between the rails of the track, and this was decided in the case of Schwindling.

In the present case, the plaintiff's principal witness, who was with the deceased at the time of the accident, testified: " Q. Then when Bell was struck, you and he were facing the engine? A. Why, certainly. Q. Facing the headlight? A. That is the only light we saw. Q. Facing the headlight? A. That was the only light we saw then. Q. You did not see it till it struck him? A. No, sir. Q. How can you account for two men walking towards the headlight of an engine and it coming towards them and you were looking for it, that you did not see it till it struck somebody? How do you account for that? A. Because she was running at a rapid speed. Q. Would the rapid speed of the engine prevent your eyesight from taking in the headlight of the engine when it was coming straight towards you? A. I was never in that place before, and we went in the direction we were told. Q. You did see the headlight? A. We saw the headlight when it struck us." He also testified that when the engine stopped it was not more than ten or twelve feet from him, and although he said it was running like lightning, that statement was a highly exaggerated and impossible one, which could not be true. But even if it were true, it would not help the plaintiff's case, since the engine was on the track and could not have struck the deceased if he had not been in a place where he ought not to have been.

Another witness for the plaintiff, D. S. Miller, testified as follows: " Q. Where did that train stop? A. The train stopped on the crossing. Q. How far was the engine from the station-house? A. I just can't tell how far. Q. About? A. About three car-lengths beyond the crossing. . . . . Q. Did you see that train come? A. Yes, sir. . . . . Q. Was there a headlight on the locomotive? A. Yes, sir. Q. And was it lit? A. Yes, sir. Q. And burning? A. Yes, sir." This witness

was a watchman at the station, and was on duty at the time of the accident.

It was proved by a number of witnesses for the defendant, and not at all contradicted, that the track at and near the station is on a straight line, and that a man standing six or seven feet from the track could see an approaching train for half a mile. It is beyond all question, under all the testimony, that if the deceased had really looked for the approaching train at a perfectly safe distance from the track, he could not possibly have failed to see the train as it approached, in ample time to avoid danger. If he came out just as the train arrived, he was equally in default for advancing immediately upon the train. The fact of collision was the result of his purely voluntary act of placing himself so close to the track as to be struck by the passing car, and in such circumstances, the facts being entirely undisputed, there cannot possibly be a recovery in damages without violating the plainest and most familiar legal principles.

We are clearly of opinion that the defendant's fourth and fifth points should have been affirmed upon the plaintiff's own testimony. There was not a particle of evidence that the deceased stopped and looked or listened, although it was affirmatively proved by the principal witness for the plaintiff that he and the deceased were warned of the approach of the train and went out of the station for the express purpose of getting upon it.

These views render unnecessary an extended examination of the various assignments of error.

Judgment reversed.