# Carson v. Federal Street and Pleasant Valley Ry. Co., Appellant.

| 147 | 219 |
|---|---|
| 161 | 134 |
| 147 | 219 |
| 168 | 521 |
| 147 | 219 |
| 187 | 113 |

*Master and servant—Contributory negligence of servant.*

The owner of a wagon which is destroyed by collision with a street car is affected by the contributory negligence of his driver.

| 147 | 219 |
|---|---|
| 202 | 2370 |

*Street railways—Duty in crossing tracks.*

It is the duty of a person about to cross a street railway track to look, so that he may not walk or drive directly in front of a moving car to be struck by it.

| 147 | 219 |
|---|---|
| 19 SC | 4446 |
| 147 | 219 |
| 23 SC | 394 |

*" Stop, look and listen."*

It *seems* that a person is not bound to stop before crossing a street railway track, but he must look and listen.

| 147 | 219 |
|---|---|
| d210 | 217 |

*Contributory negligence—Crossing.*

The driver of a wagon who approaches a street railway crossing, drives upon the track without looking, and immediately comes into collision with a car, is guilty of contributory negligence.

Argued Oct. 29, 1891.    Appeal, No. 134, Oct. T., 1891, by defendant from judgment of C. P. No. 2, Allegheny Co., July T., 1890, No. 94, on verdict for plaintiff.    Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, McCOLLUM, and MITCHELL, JJ.

Trespass by Thomas Carson, against the Federal Street and Pleasant Valley Railway Co., to recover damages for injuries to a team of horses, wagon and harness caused by collision with one of defendant's electric cars.

The facts appear in the opinion of the Supreme Court.

EWING, J., charged in part as follows :

"The Supreme Court of this state have laid down as an absolute rule, regardless of any circumstances, or almost regardless

of any surrounding circumstances, that it is the duty of a man driving a vehicle, or even walking, when he approaches a railroad crossing, to stop and look and listen—not merely to look and listen, but to stop and look and listen before he goes over, and if he does not, that is of itself negligence. Such a rule, I think, cannot be held to apply to the ordinary street crossings in the city of a street railway. If it did, with the rapidity with which these cars go each way along the streets which they pass, as said in this case, one every two or three minutes, a rule that would require a party to stop and look and listen, before crossing the track with a vehicle, bearing in mind that the cars are going each way, would be almost equivalent to saying that ordinary traffic must be abandoned in all parts' of the city where these rapid transit railways pass, or that a vehicle must have two men with it, one to get out and look while the other is ready to drive on as soon as called, because if the driver is to stop and look and listen in ordinary cases it would be of no use, by the time he could get started he would be in more danger than he would be if he had gone without stopping at all. The time taken to get up the motion would endanger him frequently more than to have driven right ahead. It would be much more reasonable to require either that the city should furnish a policeman to stand at every crossing, or that the motor companies themselves should furnish a man to warn the people. I do not think the time has come for either of them in all cases, so that you will determine this question of the alleged negligence of the driver under all the circumstances of the case. He was familiar with the crossing; he knew that these cars passed there frequently. He says he was accustomed to hearing them ringing the gong and listened for it. It appears that Washington avenue is 50 feet wide. It is level, or nearly so, for a considerable distance from this point. There are streets "A," "B" and "C" crossing, and there are two tracks, and they claim that each track is eight feet from the curb. One of the witnesses says that it is less; that they measured it seven feet eight inches. The sidewalk is said to be ten feet, the two tracks being reasonably close together. It seems that "C" street, where this occurred, is the course in which the plaintiff's wagon was going, has a down grade, how steep does not appear, but the witnesses speak of

it being a down grade, and counsel have also discussed that. On the right hand side going down the street to the avenue, there seems to be no house at the corner, so that the view to the right—I do not know whether that is up or down the street—the view from the west would be better a great deal than from the east. At the corner, or along the street to the left, or to the east, and towards the direction from which the electric car was coming, there is a row of houses that would obstruct the view until the eye would get past the corner, and it is near 18 feet from that corner to the track. Now it would be the duty of the plaintiff's driver, going down that street, to look for a car both ways. · He would not be limited to looking one way, because he is bound to look both ways. I imagine there are more accidents occur by people only looking one way for a car, than from all other reasons, where the fault is on the part of the party injured. They very naturally look only one way when they ought to look both. Now the plaintiff's driver was sitting in the wagon probably about the middle of it, he says he cannot tell ; he may have been back near the end; may have been the middle, or may have been a little farther front. You have heard the testimony in regard to the length of the wagon, horses in front, coming down. Now he says that he heard no gong, and therefore drove on, and he says that his horses were at the track, or about the track, when he saw the car was on him. He says also, that he was looking just as his eye would pass the corner. His testimony is not altogether consistent. On cross-examination, he said his horses were on the track already when he saw the car, and said also that he looked ; he saw it just as soon as the houses would permit him to see it. Well, what the fact is, is for you. The court cannot determine that. He was in motion. The length of the tongue, or the horses and wagon to where he was sitting, would not make up the 18 feet probably between the line of the house and the track. How much wider the cars are than the track no one has said ; I think they are a little wider, but I am not certain about that. Plaintiff's counsel says about ten inches on each side, so that that would not leave much margin, and the wagon was in motion. Now, under these circumstances, it is for the jury to say whether, or not, the plaintiff's driver was guilty of negligence ; whether he exercised reasona-

ble care under the circumstances. I will venture to suggest this, that I would not attribute negligence to the man in regard to an alleged mistake in not backing off when he found his horses on the track in front of the car instead of trying to go ahead, because it is a situation that it is very hard to tell what to do. My own impressions, from experience, and if I were to take the knowledge that we get from trying accident cases in this court, are that three accidents occur by people trying to back off for one that occurs by going forward in such cases, and yet there are cases where it would be better to back off. It seems, judging by the testimony in the numerous cases we have had, rather the instinct of the average man, when he sees danger, to try to back off instead of pushing ahead, and he generally fails, but that is for the jury. The question is much more ; was he guilty of negligence in getting into the position he was before he saw the car ? It would seem to have been some considerable distance back, because at the rapid rate they run, 200 feet would be run in a very short time, and the horses got over and the wagon was struck. It would appear to have been struck about the middle of it, and the street car would run a very considerable distance in the time it would take horses to go over the space that they had gone."

The jury having retired, the court sent for them and made the following explanation :

" After you went out, it occurred to me that there was room for misapprehension in regard to a part of my charge, in relation to the claim that it was necessarily negligence if a man did not stop, as well as look and listen before crossing one of these motor company's tracks, or the tracks in this case. In stating the rule adopted in relation to ordinary steam railroads and trains of cars running at a high speed and in saying that it would not apply in a city, at ordinary crossings by these roads, [I did not mean to exclude from the jury in this case, the question as to whether or not, the driver should not have stopped and looked and listened. I simply say it is not a fixed rule of law, but it is for the jury. If it were an ordinary steam railway crossing, I would have had to say to you as a matter of law, it was negligence if he did not stop, as well as look and listen, no difference what I might have thought or you might have thought about it. But in this case that is not a

rule of law. It is a question for you, under all the circumstances, as to what he should have done."] [4]

Defendant's points, all of which were refused, were as follows:

1. The evidence does not authorize the conclusion that the defendant was guilty of negligence. [1]

2. The evidence shows that in driving upon the track in front of the advancing car in the manner and under the circumstances as shown, the driver of the team was guilty of negligence, contributing to produce the accident of which complaint is made. [2]

3. Under all the evidence and the law of this case, the verdict should be for the defendant. [3]

Verdict and judgment for plaintiff.   Defendant appealed.

*Errors assigned* were (1–3) defendant's points, quoting them; and (4) the portion of the charge in brackets.

*Wm. A. Stone*, of *Stone & Potter*, for appellant.—The driver was bound to look and see whether a car was coming.   Thomas v. Pass. Ry. Co., 132 Pa. 514.

The court left to the jury no rule of law to guide them; they were permitted to make any rule which seemed good to them.

There was no evidence of negligence on the part of the company.

*Jacob H. Miller*, with him *McBride*, for the appellee.—The company was negligent in not ringing a bell: Phila. Traction Co. v. Bernheimer, 23 W. N. C. 568.

The case was properly submitted to the jury.   Schum v. Railroad Co., 107 Pa. 8; McNeal v. Railroad Co., 131 Pa. 186.

There can be no absolute rule of "stop and look and listen" applied to street car crossings.   Such a rule is unnecessary and would cause almost continual blockades at crossings where there are traction lines on both streets, each line operating in two directions.   It would drive all other traffic from the streets occupied by such lines and surrender the streets to them.

OPINION BY MR. JUSTICE GREEN, Jan. 25, 1892.

The facts of this case do not seem to be involved in controversy.   The defendant operates a line of street cars passing through Washington street, in the city of Allegheny.   The plaintiff's team, in charge of Orr, the driver, was engaged in hauling along C street, in the same city.   In going along C

street to his destination, Orr's route crossed Washington street, and the defendant's tracks therein, at right angles. When he reached the intersection he neither stopped nor looked, but drove directly upon the defendant's track. When in this position, he looked up, and saw the car just upon him. There was no time to escape. His wagon was crushed and he was injured.

This action is brought by his employer, who is affected by the contributory negligence of his employee. The question upon which the case turned in the court below was, whether the evidence of the plaintiff established contributory negligence in Orr, the driver. Upon this subject the learned judge instructed the jury that there was no rule of law that required the driver to " stop, look and listen," but that it was for them to determine what it was his duty to do, and whether he actually did it on this occasion. They were thus left without any rule of law to apply, at liberty to make one to suit themselves for the purposes of this case, which the next jury might change to suit themselves, or disregard altogether. We cannot agree to this. The street railway has become a business necessity in all great cities. Greater and better facilities and a higher rate of speed are being constantly demanded. The movement of cars by cable or electricity along crowded streets is attended with danger, and renders a higher measure of care necessary, both on the part of the street railways, and those using the streets in the ordinary manner. It is the duty of the railway companies to be watchful and attentive, and to use all reasonable precautions to give notice of their approach to crossings and places of danger. Their failure to exercise the care which the rate of speed and the condition of the street demand, is negligence. On the other hand, new appliances, rendered necesssary by the advance in business and population in a given city, impose new duties on the public.

The street railway company has a right to the use of its track, subject to the right of crossing by the public at street intersections ; and one approaching such a place of crossing must take notice of it, and exercise a reasonable measure of care to avoid contact with a moving car. It may not be necessary to stop on approaching such a crossing, for the rate of speed of the most rapid of these surface cars is ordinarily from six to nine

miles per hour; but it is necessary to look before driving upon the track. If, by looking, the plaintiff could have seen and so avoided an approaching train, and this appears from his own evidence, he may be properly nonsuited: Marland v. R. R., 123 Pa. 487. It is in vain for a man to say he looked and listened who walks directly in front of a moving locomotive. An injury so received is due to his own gross carelessness: R. R. v. Bell, 122 Pa. 58; Moore v. R. R., 108 Pa. 349. Orr testifies that he knew the crossing, that he listened for the sound of a gong, but, not hearing it, drove on the track, and was instantly struck. He drove in front of a moving car so near to him as to make a collision inevitable. If he had looked, he could have seen the car and stopped, and the accident would have been avoided. Not to do so was, in the language of R. R. v. Bell, "gross negligence," and justly defeats the action brought to recover from another damages that were self-inflicted. It is the duty of one about to cross a street railway track to look, so that he may not walk directly in front of a moving car to be struck by it. The first assignment of error is sustained. So, also, are the second and third.

The judgment is reversed.