ARA WARREN

*vs.*

THE BANGOR, ORONO AND OLD TOWN RAILWAY COMPANY.

Penobscot.    Opinion March 1, 1901.

*Railroads.    Street Railway.    Negligence.*

The plaintiff recovered a verdict for damages resulting from a collision between his team and a car of the defendant company. Upon motion to have the verdict set aside as against evidence, it appeared that it was not in controversy that the plaintiff drove along to the crossing without slackening his speed, and without stopping to look or listen, and without looking or listening for an approaching car.

*Held;* that while it cannot be declared, as a matter of law, that it is the absolute duty of a traveler to look and listen for an approaching car before crossing the tracks of a street railway, as it is under the settled rule respecting steam railroads, it may still be determined as a matter of fact that, in some situations, the exercise of ordinary care and prudence would require the traveler to look and listen before crossing the tracks of an electric railway.

The plaintiff was driving in a closed carriage on a dark night. He was familiar with the street railway crossing at Broadway and knew of the massive hedges that intercepted his line of vision down Cumberland street. If he had stopped and listened before he reached the point which commanded a view of the approaching car, he could not have failed to hear the hum of the machinery or the rumble of the car. If he had looked, after he reached the line of vision, he must have seen the brilliant headlight and the lighted moni-

tor of the approaching car. In this situation the plaintiff was not relieved by anything in the conduct of the motor-man of the plain duty to use his own senses of sight and hearing when they were so manifestly available to him. He was required to do for his own safety and protection what ordinarily careful persons are accustomed to do under like circumstances.

*Held;* that his failure to look and listen for the approaching car, before attempting to cross the track, was the result of his own thoughtless inattention and must be regarded as negligence on his part.

Nor does it appear that the consequences of the plaintiff's negligence in this respect could have been avoided by the use of any ordinary care on the part of the motor-man. The plaintiff's own neglect was the proximate cause of the accident.

On motion by defendant.     Motion sustained.

Action on the case to recover damages which the plaintiff claims he has sustained in his property on account of a collision between his carriage, in which he was riding, and an electric car of the defendant company at the junction of Broadway and Cumberland streets, in the city of Bangor, caused by the alleged negligence of the defendant company, in the evening of November 21, 1899.

The jury returned a verdict for the plaintiff for $117.00.

*M. Laughlin,* for plaintiff.

*E. C. Ryder,* for defendant.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, SAVAGE, FOGLER, POWERS, JJ.

WHITEHOUSE, J. The plaintiff recovered a verdict for the damages alleged to have been sustained by reason of injuries to his horse, carriage and harness resulting from a collision between his team and one of the electric cars of the defendant company at the intersection of Broadway and Cumberland streets in Bangor.

The case comes to the law court on the defendant's motion to have the verdict set aside as against the evidence.

The accident happened on the twenty-first day of November, 1899, about twenty minutes before seven o'clock in the evening. The plaintiff was driving into the city down Broadway with his horse harnessed to a "Bangor" top-buggy. The electric car was running up Cumberland street on schedule time on its regular trip

from Bangor to Old Town, leaving West Market square at 6.30. At its intersection with Cumberland street, Broadway is 83.feet wide and Cumberland street 50 feet wide at that point. The defendant's railway is near the centre of Cumberland street and running easterly across Broadway the grade is slightly ascending, but so nearly level that the rise is scarcely perceptible. At the corner of Broadway and Cumberland street, on the west line of Broadway and the north line of Cumberland street, were dense buckthorn hedges six feet in height, which obstructed the plaintiff's view of Cumberland street west of Broadway until within about fifty feet of the place of collision. The plaintiff was a resident of Bangor, was in the habit of driving on Broadway frequently and was familiar with these streets, and the conditions above described. On the evening in question it was dark and foggy and the top of the plaintiff's carriage was up and the sides put on. The electric car was a closed car with vestibules. It was provided with a headlight, and the interior was lighted the entire length in the usual manner. The plaintiff says, in effect, that he failed to see the car until it "suddenly flashed on to" him after the horse was on the track, and that he then applied the whip in the hope of getting across the rails and avoiding a collision; but when the car was about the centre of Broadway, it struck the carriage on the fore-wheel, throwing the horse to the right and the carriage to the left of the track.

The motor-man in charge of the car testifies that he was not aware of the approach of the team until it was within twelve or fifteen feet of the place of collision, and that he then applied the brake and used every exertion to stop the car in season to prevent a collision but was unable to do so.

The plaintiff thereupon contends, as the principal ground of defendant's liability, that the motor-man was guilty of negligence in not exercising greater vigilance to discover an approaching team and in not employing more effective measures to stop the car in season to avoid the accident; and he introduces evidence tending to show that immediately before the collision the motor-man was engaged in frivolous conversation with a passenger, and that others

on the car saw the team before the motor-man discovered it. The defendant insists that no failure of duty on the part of the motor-man in these respects is shown by the evidence, and contends that on the other hand the conclusion is irresistible that the negligence of the plaintiff was the proximate cause of the accident.

The testimony is conflicting in regard to the rate of speed at which the plaintiff was driving. He testifies that he was "jogging along at the rate of four or five miles an hour," while the defendant's witnesses say the horse was coming so rapidly that they thought it was a runaway team. But it was not in controversy that he drove along to the crossing without slackening his speed, whatever it was, and without stopping to look or to listen, and without looking or listening for an approaching car.

True, the established rule respecting steam railroads, that it is negligence per se for a person to cross the track without first looking and listening for a coming train, is not deemed wholly applicable when crossing the tracks of a street railway company in a public street where the cars do not enjoy the exclusive right of way. In other words, it cannot be declared as a matter of law that it is the absolute duty of a traveler to look and listen for an approaching car before crossing the tracks of a street railway. *Kelly* v. *Wakefield and S. St. Railway Co.*, 175 Mass. 331, (S. C. N. East. Rep. 285); *Robbins* v. *Springfield Street Railway*, 165 Mass. 30; *Hall* v. *West End St. Railway Co.*, 168 Mass. 461. But the reasons for the rule applied to steam railways may, under some circumstances, be applicable to the crossing of a street railway. It may be determined, as a matter of fact, that the exercise of ordinary care and prudence would require a traveler in some situations to look and listen before crossing the tracks of a street railway. In the recent decision of *Kelly* v. *Wakefield & S. St. Ry. Co.*, supra, a case presenting striking analogies to the case at bar, it was found by the law court as a matter of fact that the plaintiff, who was approaching a street railroad track obscured by a dense growth of trees for a portion of the distance to the place of crossing, was guilty of contributory negligence in failing to look and listen for cars on reaching the crossing, although he had previously looked from a

point commanding a view of the further end of the growth of trees.

In the case at bar the plaintiff was driving in a closed carriage on a dark night. He was familiar with the street railway crossing at Broadway; he "knew of the car and the track." He must have known that according to the schedule a car would leave West Market Square at 6.30 P. M. on a regular trip to Old Town; and he must have known approximately the rate of speed at which it was usually run over Cumberland street, and about what time it would be likely to cross Broadway. He knew of the massive hedges that intercepted his line of vision down Cumberland street until he arrived "within a few feet" of the northerly line of that street. If he had stopped and listened before he reached the point which commanded a view of the approaching car, he could not have failed to hear the hum of the machinery or the rumble of the car. If he had stopped to look and listen after he reached the line of vision, or had looked without stopping, he must have seen the brilliant headlight and the lighted monitor of the approaching car. His own carriage was not provided with lights, and his team was not likely to be seen or heard by the motor-man until its approach near the track. In this situation the plaintiff was not relieved by anything, in the conduct of the motor-man, of the plain duty to use his own senses of sight and hearing when they were so manifestly available to him. He was required to do for his own safety and protection what ordinarily careful persons are accustomed to do under like circumstances. The exercise of ordinary care and prudence required him to look and listen for the approaching car before attempting to cross the track. His failure to do so was the result of his own thoughtless inattention, and must be regarded as negligence on his part.

Nor does it appear from the evidence that the consequences of the plaintiff's negligence, in this respect, could have been avoided by the use of any ordinary care on the part of the motor-man. The fact that the team may have been discovered by a passenger a second before it was seen by the motor-man by no means proves a failure of duty on the part of the latter. He had just received a signal-bell to stop for a passenger to alight at Broadway and for

the moment was mindful of that duty; and it does not appear from the evidence that his previous conversation with a passenger interfered with his duty respecting the plaintiff. It is shown by a preponderance of the evidence that the gong was sounded in the usual manner when the car reached the Broadway crossing.

The plaintiff's own negligence must, therefore, be deemed the proximate cause of the accident.

*Motion sustained.*