JOSEPH BEERMAN *vs.* UNION R. R. COMPANY.

PROVIDENCE—JULY 2, 1902.

PRESENT : Stiness, C. J., Tillinghast and Rogers, JJ.

(1)  *Negligence.  Street Railways.  Crossing Tracks.  Contributory Negligence.*

A railroad track, whether steam or electric, is a place of danger, and a person crossing it, whether on foot or in a vehicle, must exercise ordinary care for his own safety to exonerate him from the charge of contributory negligence; and what is ordinary care under one set of circumstances might amount to negligence under a different set of circumstances. Ordinary care is such care as a person of ordinary prudence exercises under the circumstances of the danger to be apprehended. The greater the danger the higher the degree of care required to constitute ordinary care, the absence of which is negligence. It is a question of degree only. The kind of care is precisely the same.

(2)  *Right of Way.  Crossing Tracks.*

The driver of a carriage approaching a car track has the right of way if, proceeding at a rate of speed which under the circumstances of the time and locality are reasonable, he should reach the point of crossing in time to safely go upon the tracks in advance of the approaching car, the latter being sufficiently distant to be checked and, if need be, stopped before it should reach him.

(3)  *Street Railways.  Crossing Tracks.  Contributory Negligence.*

Where the driver of a carriage reached the car track at the intersection of the street he was driving upon with the street the track was upon, the

exercise of ordinary care required him to look and listen for an approaching car before attempting to cross the track, and his failure to do so must be regarded as negligence. Whatever the fault of the motorman, it was the duty of the driver to have looked *both ways* and to have listened before attempting to cross the track, and to have done so *immediately before* crossing the track. Failure to do so is sufficient for the court to hold a party negligent as matter of law.

TRESPASS ON THE CASE for negligence. Heard on petition of plaintiff for new trial, and petition denied.

ROGERS, J. This is the plaintiff's petition for a new trial after a nonsuit in an action on the case for negligence growing out of a collision between the plaintiff's carriage and the defendant's electric car at the corner of Camp and Lippitt streets in the city of Providence.

The evidence showed that on July 28, 1899, the plaintiff lived on Lippitt street a little west of Camp street, and but a short distance from the place of the accident, with which location and the running of the defendant's cars he was thoroughly acquainted, having been in the habit of driving over the same at frequent intervals; that on said last mentioned date, between six and seven o'clock in the evening, he was on his way home from Pawtucket in an open two-seated carriage containing his wife and a child on the rear seat, and a gentleman friend, a child and himself on the front seat; that he was driving down Lippitt street and approaching Camp street from the eastward, said streets running practically at right angles with one another; that his horse was a big, heavy one, very gentle, and quite old, as he was "pretty old" when plaintiff bought him six years before the accident; that he was driving—in his own words—"not very fast, just simply jogging along, trotting slowly, that is the only way that horse can go;" that he was holding the reins very tight going down hill, as it is a descending but not a steep grade there; that he occupied the right side of the front seat, and the carriage was on the right side of Lippitt street, as he approached from the east towards Camp street; that on the right (or north-east) corner of Lippitt and Camp streets was a high, close board fence on the street line which would ob-

scure his view of a car if one should be coming along the Camp street track from the northward until he got near enough to Camp street to look by the fence ; that a house stood on the street line on the left hand side (or south-east) corner ; that the east sidewalk on Camp street was twelve feet wide, and that it was twelve feet from the curbstone to the east rail of the track.   The plaintiff in his direct examination described the occurrence of the accident substantially in this wise : "I was driving along on Lippitt street on the east side of Camp street and as I reached the corner of Lippitt and Camp streets I turned my head to my right just to look out for the car up Camp street.   At that time my horse was very close to the track ; in the mean time I looked to the left and there was no bell ringing ; I never heard it.   At that time the horse got struck by an electric car which ran very fast and dragged the horse along throwing us out.   That is as far as I remember about the accident."

It also appeared that when the plaintiff first saw the car, it must have been about thirty feet off and that the horse was probably two feet from the track ; that after he saw the car he jerked the reins up in order to draw the horse back and avoid an accident ; that the car was running at such a speed he did not have enough time to cross the track and so he pulled his horse back but it was too late.   In cross-examination the plaintiff swore as follows : "Q. When you got to Lippitt street you were coming down there, you say, on a jog trot ?   A. Yes sir.   Q. You trotted all the way down Lippitt street until the horse was hit ?   A. Yes sir.   Q. When you got down to Lippitt street you kept going right along and you looked up over the fence when you went along, and saw that no car was coming down on the right hand side ?   A. I didn't look over the fence, I was on the side of the fence.   Q. I don't understand you.   You had got down so you looked past the fence ?   A. No not past the fence, I looked down the street.   Q. You didn't look over the fence ?   A. No.   Q. You waited until you got by the fence and turned your head ?   A. Yes sir.   Q. And immediately you turned and looked up to the left you were hit, when you looked to the left the car

was upon you ; I understand you to say the accident was inevitable then and neither of you could get away, that is right ? A. I guess you heard my statement before. Q. That is the statement you made before is it not ? A. Yes sir. Q. Let me repeat that, when you got by the corner of the fence you were quite a way by the corner of the fence when you looked up ? A. I was between the fence and the track. Q. When you looked up ? A. Yes sir. Q. Your horse was going all the time when you looked to the right and didn't see the car coming down ? A. No sir. Q. You looked to the left then and your horse was going all the time ? A. No, when I looked to the right the horse was going, but when I looked to the left I jerked him up. Q. When you looked to the right your horse was going, and when you looked to the left the car was upon you ? A. Yes sir. Q. How near to you ? A. Very close. Q. So close an accident was inevitable ? A. Yes sir. . . . Q. In other words you were in a position where you had got to be hit wasn't it, no doubt about that ? A. In a position I had to be hit. In that position I was. Q. You were; a turn in either direction would have hit you, you couldn't turn to the right or to the left ? A. No sir. Q. Nothing for you to do but to be hit under those circumstances ? A. Yes sir. . . . Q. When you first discovered the car where was your horse's head ? A. Close to the track. Q. How close ? A. About two feet. Q. He was trotting ? A. He was going slow then. Q. Going right straight along you say until you saw the car ? A. Yes sir. Q. Then you held him in ? A. Yes sir. Q. He was going the same rate right straight along until you saw the car and held him in ? A. Yes sir. Q. Where was your horse hit,—where ? A. Right on the hip." Mrs. Beerman testified that the car was about half a yard away from the wagon when she first saw it.

When the plaintiff rested his case the court nonsuited him on the defendant's motion, and the question is—was the nonsuit well granted ?

As the ordinances of the city of Providence provide that every person having the control of the speed of a street railway car shall keep a vigilant watch for all teams, carriages and

persons, especially children, either on the track or moving in the direction of the track ; and shall strike a bell several times in quick succession on approaching any such team, carriage or person, or any cross or intersecting street (Ord. of Prov. (1899) cap. 43, § 1, par. iv. p. 125), and as the evidence tended to show that no bell was struck we shall assume that the defendant was guilty of negligence, so the question arises— was the plaintiff guilty of contributory negligence ?

Inasmuch as this case involves the relative rights and duties of those entitled to the use and enjoyment of the public streets it is a matter of importance which user is entitled to precedence of use at a given time, where two desire to use the same place at the same time. In the case at bar a one-horse carriage going at a slow pace, so slow that it could be stopped within a distance of a very few feet, and a heavy electric street-car authorized to go over the street in question at a speed not faster than nine miles an hour, collide when approaching one another through intersecting streets. Both car and carriage are entitled to use the streets, but the different purposes for which they are designed place them under very unequal conditions. The car is designed to serve a quasi-public use as a carrier of passengers in large numbers per car, and for that reason it is necessarily large and cumbrous. It is also allowed, in serving the public requirements, to go at a high speed, and hence it is permitted to travel in grooves or on tracks to aid its speed by lessening friction and affording a smooth easy path. Its speed is allowed to greatly exceed that of an ordinary carriage, as by law it may traverse Camp street at a rate not faster than nine miles an hour, Ord. of Prov. (1899) cap. 43, § 1, par. 1, p. 125, whereas an ordinary carriage is not allowed by law to be driven faster than a common travelling pace—Pub. Laws R. I. of Nov. 26, 1901, cap. 925, § 1. Its running in grooves or on a track imposes certain limitations upon it that an ordinary carriage does not labor under, viz., its being confined to the line of the track and not being able to depart therefrom.

(1)     A railroad track, whether steam or electric, is a place of danger, and a person crossing it, whether on foot or in a

vehicle, must exercise ordinary care for his own safety to exonerate him from the charge of contributory negligence, and what is ordinary care under one set of circumstances might amount to negligence under a different set of circumstances. Ordinary care is such care as a person of ordinary prudence exercises under the circumstances of the danger to be apprehended. The greater the danger the higher the degree of care required to constitute ordinary care, the absence of which is negligence. It is a question of degree only. The kind of care is precisely the same. *Young* v. *Citizens St. R. R. Co.*, 148 Ind. 54, 58; *Prue* v. *N. Y., P. & B. R. R. Co.*, 18 R. I. 360, 369.

In *McGee* v. *Consolidated St. Ry. Co.*, 102 Mich. 107, 115, the court said: "We see no more reason for applying the rule that one must look and listen before crossing the tracks of a steam railway than that one must look and listen before crossing a street-car track upon which the motive power is electricity or the cable. In this State it is well settled that persons passing over railroad crossings must exercise care. They must look and listen, and, under certain circumstances, must stop, before attempting the crossing. Electric street-car crossings are also places of danger. The cars are run at a great speed on this street in question. The city ordinance permits it, and the rule must be that, before going upon such tracks every person is bound to look and listen. If the view is unobstructed, and the pedestrian takes this precaution, there is not much opportunity for him to be injured. It will not do to say that he has discharged his responsibility in case of an accident by looking when some feet away, for he may miscalculate the distance and the speed of the car. To avoid danger he must look just before he enters upon the track."

In *Blakeslee* v. *Consolidated St. Ry. Co.*, 105 Mich. 462, 465, which was a case of collision between an electric car and a vehicle, the court used this language: "The use of electric cars involves, as it was intended it should, rapid transit. More or less time is required to stop them. They have the right of way within reasonable bounds; and other travelers by ordinary methods, owe the duty of making way for them

without unnecessary or unreasonable delay. Of necessity, ordinary vehicles must be permitted to drive upon and cross the tracks when the cars are at a reasonably safe distance, and the railway company is in duty bound to keep a sharp lookout, and use prompt measures to prevent accidents when danger threatens. But persons should not pass upon a track without using some precaution to ascertain whether danger is imminent. The case of *McGee* v. *Railway Co.*, 102 Mich. 107, is a case in point. In that case a pedestrian looked in one direction, but not in the other, before stepping upon the track, when by doing so he would have seen the lights of the approaching car. In the more recent case of *Fritz* v. *Railway Co.*, 105 Mich. 50, it was held that one riding in a covered carriage, and thereby prevented from looking behind, could not recover against the street-car company, when he turned suddenly upon the track, in front of a car, and was injured. From these cases it appears that it is negligent to go upon a track without taking some precautions to ascertain whether it is safe, and that a person cannot avoid this by placing himself in a position where he cannot easily see an approaching car. The plaintiff did this thing ; and if the car was so close that it can be said to have been an imprudent thing to do, if ordinarily prudent persons, knowing the whereabouts of the car, would not have thus turned upon the track, his act was negligent, and should preclude a recovery, if it contributed to the injury."

In *Carson* v. *Federal St., etc., Ry. Co.*, 147 Pa. St. 219, 224, the court said : " The street railway has become a business necessity in all great cities. Greater and better facilities and a higher rate of speed are being constantly demanded. The movement of cars by cable or electricity along crowded streets is attended with danger, and renders a higher measure of care necessary, both on the part of the street railways, and those using the streets in the ordinary manner. It is the duty of the railway companies to be watchful and attentive, and to use all reasonable precautions to give notice of their approach to crossings and places of danger. Their failure to exercise the care which the rate of speed and the con-

dition of the street demand, is negligence. On the other
hand, new appliances, rendered necessary by the advance in
business and population in a given city, impose new duties
on the public. The street railway company has a right to
the use of its track, subject to the right of crossing by the
public at street intersections; and one approaching such a
place of crossing must take notice of it, and exercise a rea-
sonable measure of care to avoid contact with a moving car.
It may not be necessary to stop on approaching such a cross-
ing, for the rate of speed of the most rapid of these surface
cars is ordinarily from six to nine miles per hour; but it is
necessary to look before driving upon the track. If, by look-
ing, the plaintiff could have seen and so avoided an approach-
ing train, and this appears from his own evidence, he may be
properly nonsuited; *Marland* v. *R. R.*, 123 Pa. 487. It is in
vain for a man to say he looked and listened who walks di-
rectly in front of a moving locomotive. An injury so re-
ceived is due to his own gross carelessness; *R. R.* v. *Bell*, 122
Pa. 58; *Moore* v. *R. R.*, 108 Pa. 349. Orr testifies that he
knew the crossing, that he listened for the sound of a gong,
but, not hearing it, drove on the track, and was instantly
struck. He drove in front of a moving car so near to him as
to make a collision inevitable. If he had looked, he could
have seen the car and stopped, and the accident would have
been avoided. Not to do so was, in the language of *R. R.* v.
*Bell*, ' gross negligence,' and justly defeats the action brought
to recover from another damages that were self inflicted. It
is the duty of one about to cross a street railway track to
look, so that he may not walk directly in front of a moving
car to be struck by it."

In *Ward* v. *Railway Co.*, 17 N. Y. Supp. 427, it appeared
that the plaintiff's intestate was fatally injured while attempt-
ing to drive across a street-railway track. There was evi-
dence that, at any time before reaching the track, the de-
ceased, by a glance, could have informed himself of the ap-
proach of the car, but that he drove onto the track without
looking in either direction. It was held that he was guilty
of contributory negligence.

See also *Ehrisman* v. *East Harrisburg City Passenger Ry. Co.*, 24 Atl. Rep. 596 (Pa.); *Warren* v. *Bangor, etc., Ry. Co.*, 49 Atl. Rep. 609 (Me.); *Everett* v. *Los Angeles, etc., Ry. Co.*, 115 Cal. 105, 124; *Cawley* v. *La Crosse City Ry. Co.*, 101 Wis. 145; Booth's Street Ry. Law, section 315.

(2)    Inasmuch as the carriage reached the car track at the intersection of Camp and Lippitt streets, before the car did, and inasmuch as cars are frequently in sight when one wishes to cross a track, the question arises as to the relative rights of way between car and carriage. We think the rule laid down by the Supreme Court of New Jersey in *N. J. Elec. Ry. Co.* v. *Miller*, 59 N. J. L. 423, is the proper one, and it is as follows, viz.: "The driver" (of a carriage) "would have the right of way if, proceeding at a rate of speed which, under the circumstances of the time and locality, was reasonable, he should reach the point of crossing in time to safely go upon the tracks in advance of the approaching car, the latter being sufficiently distant to be checked, and, if need be, stopped, before it should reach him."

The law as laid down in the cases before referred to, appear to us to be sound, and applying those principles to the case at bar, we think that when the plaintiff approached the intersection of the streets referred to he was required to do for his own safety and protection what ordinarily careful persons are accustomed to do under like circumstances. The exercise of ordinary care and prudence required him to look and listen for the approaching car before attempting to cross the track, and his failure to do so would be the result of his own thoughtless inattention, and must be regarded as negligence on his part.

When the plaintiff in the case at bar came down Lippitt street towards Camp street, he swore he heard no bell, and though a car makes a loud whirr or noise ordinarily, on an up grade, and it was an up grade and a very quiet place there, he heard no sound of an approaching car. He was driving very slowly so that he could easily have stopped within a very short distance, almost instantaneously. On the other hand, the defendant's car, according to the evidence, was going

rapidly, exactly how rapidly does not appear, but if it was going up to its legal limit of speed, viz., nine miles per hour, then it would have been going at the rate of 13⅕ feet per (3) second, or 792 feet per minute. Whatever the fault of the motorman, it was the duty of the plaintiff to have looked *both ways* and to have listened before attempting to cross the track, and to have done so *immediately before* crossing the track. He was on the right hand or north side of Lippitt street approaching Camp street, and, so to speak, was under the shadow of a high board fence obscuring his view to the right, or northward, up Camp street, until he reached the line of Camp street, and. his thoughts seem to have been concentrated on looking to the right for a car which was not there, while he paid little or no attention to the left or to any approaching danger from the south. Being on the right hand side of Lippitt street he had a better chance to look to the left, or south, down Camp street, and in any event he could have looked north or south for a long straight distance up or down Camp street when he got within 24 feet of the car track, within which distance he could have stopped his carriage several times had he been so disposed, and a glance of the eye, taking less than a second, would have sufficed to have informed him of the rapidly approaching car from the south laden with danger for him. It is idle for him to say that he looked to the south, as, had he done so, he could not have failed to see the car, for there was no obstruction to prevent his seeing while still far enough from the track to allow him to pull up and make his escape effective. But he kept on without abatement of speed until collision was inevitable. As said in *Cones* v. *Cincinnati, etc., Ry. Co.*, 114 Ind. 328, 330 : "The law will assume that he actually saw what he could have seen, if he had looked, and heard what he could have heard, if he had listened."

Under these circumstances the language of this court in *Nicholas* v. *Peck*, 20 R. I. 533, is applicable : "Though ordinarily the question of contributory negligence is for the jury, we think the plaintiff's negligence is sufficiently clear for the court to hold that he was negligent as a matter of law."

Nothing hereinbefore contained is intended to authorize any inference that a street-car is entitled to the exclusive use of the part of a street occupied by its track either at the intersection of streets or elsewhere in a public highway in this State. Pedestrians, vehicles and cars all have their relative rights in the highways adapted to the peculiar uses to which each class is allowed to put them, and the general rule is applicable to all that the greater the danger to be apprehended the higher is the degree of care required. A pedestrian using the sidewalk of a city street is not required to exercise so high a degree of care as he would be required to exercise should he attempt to cross from one side of the street to the other ; for, then, before crossing, it would be incumbent upon him to glance up and down the street to see that he was not stepping in front of an approaching horse and carriage going at a speed that would cause collision and probable injury. So if the pedestrian was crossing the intersection of a railroad track and a highway at grade, he would be required to look and listen, and if looking and listening, owing to the peculiar surroundings of the place, or other peculiarities like a raging snow storm, etc., might be ineffectual, then he would be required to *stop*, that he might the better look and listen. As we have hereinbefore stated, the degree of care required depends upon the degree of danger to be apprehended. One using a vehicle must use due care no less than a pedestrian, and the same is true of the motorman of an electric car if each would be free from negligence. The phrase, *look and listen*, used in the books, is simply synonymous with using one's senses to inform the mind of danger that, being liable to threaten, must be guarded against. Thus, as said by this court in *Ormsbee* v. *B. & P. R. R. Co.*, 14 R. I. 103 : "That ordinary prudence requires one who enters upon as dangerous a place as a railroad crossing to use his senses, to listen, to look, or to take some precaution for the purpose of ascertaining whether he may cross in safety, is an established rule both of law and experience."

Though the case of *Carson* v. *Federal St. &c. Co.*, *supra*, seems to lay stress upon the relative rights and duties at elec-

tric car crossings at intersections of streets, yet that is because, in that particular case, the accident occurred at such a crossing, and no inference, in our opinion, can properly be drawn from its non-reference to the rights of vehicles at other places, that no such rights exist. In *Blakeslee* v. *Consolidated St. Ry. Co.*, *supra*, the collision was not at a street intersection and the car was coming behind the vehicle when the latter turned suddenly upon the track before the latter car could be stopped, and thus caused the collision. In *Golrick* v. *Union R. R. Co.*, 20 R. I. 128, this court said : "If it be conceded that the railroad company has a paramount right to use that portion of the street occupied by its track, since its cars are necessarily confined to its rails and cannot turn to the right or left, the public nevertheless also have the right to use the street, including the portion occupied by the track ; and it is incumbent on the railroad company, notwithstanding its paramount right, to exercise due care in the operation of its cars not to injure those who may be travelling on the street." In *Winter* v. *Harris*, 23 R. I. 47, this court held that under certain circumstances it was the duty of the driver of a vehicle to use an electric street car track when there was no danger of colliding with an approaching car.

In the opinion of the court the plaintiff's petition for a new trial must be denied, and the case is remitted to the Common Pleas Division with direction to enter judgment for the defendant for costs.

*James A. Williams*, for plaintiff.
*David S. Baker*, for defendant.