## CITIZENS STREET RAILWAY COMPANY *v.* HELVIE.

[No. 2,431. Filed March 9, 1899. Rehearing denied June 13, 1899.]

STREET RAILWAYS.—*Crossings,—Negligence.*—One is guilty of contributory negligence in attempting to cross a street railway track without first looking and listening. *p. 520.*

SAME.—*Crossings.—Negligence.*—The fact that the street car company was running its cars at an unlawful rate of speed will not excuse a traveler for his failure to observe an approaching car nor his failure to use ordinary care to avoid injury. *p. 520.*

NEGLIGENCE.—*Street Railways.—Injury at Crossing.*—Where a person driving along a street toward an approaching street car which he could plainly see for a distance of 1,000 feet, attempted to cross the track and was struck by the car before he had traveled a distance of ten feet, and was injured, he was guilty of such negligence as to bar a recovery, although the car was being run at a rate of speed in violation of a city ordinance. *pp. 515-520.*

From the Delaware Circuit Court. *Reversed.*

*J. W. Ryan* and *W. A. Thompson,* for appellant.

*R. S. Gregory, A. C. Silverburg, O. J. Lotz* and *W. P. Koons,* for appellee.

HENLEY, J.—The appellee, George E. Helvie, was the plaintiff in the court below and commenced this action against appellant to recover damages for injuries received by him on account of the alleged negligence of appellant. The complaint was in one paragraph. The lower court overruled appellant's motion to make the complaint more specific, and its demurrer to the complaint for want of facts. Appellant answered the general denial. There was a trial by jury, and a special verdict returned, at appellant's request. The special verdict is in the form of interrogatories and answers. Both parties to the action moved for judgment upon the special verdict. Appellee's motion was sustained; that of appellant's overruled. Appellant's motion for a new trial was overruled, and judgment rendered in favor of appellee. Appellant, in its assignment of errors, questions the action

of the lower court in overruling its motion to make the complaint more specific, in overruling the demurrer to the complaint, in overruling its motion for judgment upon the special verdict, in sustaining the motion of appellee for judgment upon the special verdict, and in overruling its motion for a new trial.

The facts upon which appellee depends for his judgment against appellant, as disclosed by the special verdict, are as follows: The appellant, a corporation, operated a street railway upon and over Jackson street in the city of Muncie, Indiana, on the 10th day of April, 1896, and over and upon Jackson street, a highway westward from the city of Muncie, to and through a suburb of said city known as West Side. That appellant's cars were propelled by electricity. Its track was situated along the north side of Jackson street, westward through West Side. There was a street in West Side on the north side of Jackson street known as Dick street, which extended north from Jackson street. Appellant had operated its road along Jackson street westward from the city of Muncie to and beyond Dick street for three years prior to April 10, 1896. There was an ordinance in the city of Muncie in full force and effect passed on the 17th day of July, 1893, as follows: "Be it ordained by the common council of the city of Muncie, that the speed of any steam motor propelling any car or cars within the limits of the city of Muncie shall not exceed the rate of ten miles per hour; provided that at all the crossings of the streets, the speed shall be reduced to six miles per hour, except at places where said steam or electric motors cross the track of any other street railway. At such places the said steam or electric motors shall be brought to a full stop." Appellant's track was on a level with the street at the point where Dick street leads north from Jackson street. Appellee is a man forty-seven years old, a teacher of vocal and instrumental music of twenty years' experience, and had no other business or profession; he received, as the result of his labors as a teacher,

about two dollars per day; he lived in the suburb called West Side, about one mile and a quarter from Walnut street in the city of Muncie. Appellee was in the city of Muncie on the night of April 10, 1896, and started for his home shortly after 10 o'clock p. m., driving west along Jackson street in a one-horse top buggy. The horse appellee was driving was a gentle horse. Appellee proceeded west along Jackson street, driving in a trot at the speed of from four to six miles per hour, and, in turning off of Jackson street into Dick street to go north, his horse and buggy collided with appellant's car. The point in Jackson street from which Dick street extends north was lighted on said night by flambeaux. Appellant's car was lighted by electricity, had a vestibule in front, which was provided with glass windows, and carried an electric headlight and a gong. The gong was not sounded upon the approach of the car to Dick street. Appellant's track was five feet one inch in width, and it was six to eight feet to the south rail of appellant's track from the point where appellee turned north on Jackson street into Dick street. At about the time appellee started to turn north off of Jackson street at Dick street, he saw appellant's car approaching from the west; said car was at that time 210 feet from appellee, and he saw and estimated the distance the car was westward from Dick street; he had frequently crossed the track at Dick street prior to this time in his buggy, and knew the speed at which the cars were run at the place, but believed that the car was not running at a greater speed than six miles per hour, and would not have attempted to cross if he had known that the car was running at a speed of fifteen miles per hour or more. The bridge on Jackson street which spans White river is about sixty rods east of Dick street. Jackson street is about forty feet wide, and its south side, extending up to the south rail of the street railway track, is used by the traveling public on horse, in vehicle, or on foot. Appellee was traveling in the beaten portion of the street south of the tracks, and was driving in

a careful manner.  Appellant's car was running at a speed
of fifteen or twenty miles per hour as it approached Dick
street and collided with appellee's horse and buggy, and the
speed was not slackened or checked as it approached Dick
street.  By the accident appellee's horse was killed, his
buggy and harness rendered worthless, and he suffered per-
manent personal injury to himself.  Appellee's horse was
not running away; appellee was not intoxicated; he was not
asleep or unconscious at the time of the accident, and his
eyesight, and hearing were good.  There was nothing to pre-
vent appellee from seeing a street car up the track for 1,000
feet west of where he was injured.  He did not stop his
horse or check his speed, as he turned north to cross appel-
lant's tracks, although he saw appellant's car approaching,
and the jury find that there is no evidence as to how far the
car was west of the crossing when appellee's horse reached
the south side of the track.  Appellee's horse never got
further north in crossing the track than his two fore feet just
south of the north rail.  The horse was struck in the front
of its head by the front end of the car, and killed.  The rails
are four feet eight and one-half inches apart.  Car number
seventeen which struck appellee, was so constructed that
fifteen to twenty miles per hour was its extreme limit of
speed.  At the time the accident occurred, and prior thereto,
appellant was running its cars over Jackson street,—one
every seven and one-half minutes.  When the collision oc-
curred between the car and appellee's horse, the horse was
thrown back upon the dashboard, breaking it down, and the
head of the horse rested nearly upon the buggy seat.  Ap-
pellee and horse and buggy were carried more than 100
feet beyond where they were struck.  After appellee saw
the approaching car, he did not again look toward the mov-
ing car until just before it struck his horse.  It is also found
that appellee's horse had advanced but ten feet north after
appellee first saw the approaching car before the horse was
struck by the car, and that, in order for the car to have

Citizens St. R. Co. *v.* Helvie.

moved over the 210 feet,—which was the distance the car was away when appellee first saw it and when he started to cross the track (according to the finding of the jury), the car must have approached at the rate of about sixty miles per hour.

In order to sustain the judgment for appellee in this cause, it must appear from the special verdict that the appellant was guilty of negligence, which was the proximate cause of appellee's injury, and that appellee was free from contributory fault. Conceding, without deciding, that the special verdict shows that appellant's negligent act resulted in appellee's injury, then the question arises—if appellee had acted as a reasonably prudent man would have acted in the same situation, would the injury have occurred?

The situation of the highways and track are shown by the above cut. As appellee drove west to where Dick street led off to the north, the car was coming toward him upon a level track with nothing to obstruct his vision for a distance of more than 1,000 feet; the car was carrying a brilliant electric headlight, and there were flambeaux at the crossing. Driving along at a gait of four to six miles per hour, without decreasing his speed, upon a level road, with the street car rails level with the surface of the street, he turned north, and attempted to cross the tracks in front of the car which he plainly saw approaching, and before the horse had passed entirely over the south rail of the track, it was struck by the

car. It is found by the jury that the car was going at the rate of fifteen to twenty miles per hour; that, under its construction, that was the limit of its speed; that appellee was going at the rate of four to six miles per hour. It is easy to determine from these facts how close the car must have been to appellee when he attempted to cross the track in front of it. No reasonably prudent man would have attempted to cross the track under these facts, as shown by the special verdict. According to the facts, appellee had only to move over a space of less than fifteen feet in order to pass beyond any danger of colliding with the car, yet we find that his horse was struck before his front feet passed the second rail. It is impossible to escape the conclusion that appellee's negligence contributed to his injury.

It is held in the case of *Young* v. *Citizens Street R. Co.*, 148 Ind. 54, that one is guilty of contributory negligence in attempting to cross a street railway track without looking and listening. Also see, *McGee* v. *Consolidated Street R. Co.*, 102 Mich. 107, 60 N. W. 293, 26 L. R. A. 300; *Carson* v. *Federal Street, etc., R. Co.*, 147 Pa. St. 219, 23 Atl. 369, 15 L. R. A. 257; *Fritz* v. *Detroit Street R. Co.*, 105 Mich. 50, 62 N. W. 1007.

The use of appellee's senses of sight and hearing would have enabled him to escape the injury, and the failure of appellant to do its duty will not excuse appellee from his failure to see and observe the approaching car, and to use ordinary care to avoid injury. This rule of law needs no discussion or authorities to sustain it. The reports of the Supreme and Appellate Courts of this State are burdened with the often repeated, well established rules of law applicable to cases arising from negligence. He could have heard and could have seen the car, and it is presumed that he both heard and saw it. The jury find that appellee saw the car when it was 210 feet from the intersection of Dick street; that he saw it no more until it struck the horse. The facts found by the jury showing contributory negligence upon the part of ap-

pellee are many and glaring. The lower court erred in sus-
taining appellee's motion for judgment upon the special ver-
dict. The judgment of the lower court is reversed, with
instructions to sustain appellant's motion for judgment upon
the special verdict.