JOHN HANLEY, Admr, Etc., Appellant, v. FT. DODGE LIGHT & POWER COMPANY, Appellee.

**Submission of issues.** An issue without support in the evidence,
1    or upon which a recovery could not be had in any event, should not be submitted to the jury.

**Street railways:** PERSONAL INJURY: ORDINARY CARE: INSTRUCTIONS.
2    In an action for the death of a child from collision with a street car, "ordinary care," in operating the car is the test of defendant's negligence, although a higher degree of care is required for the safety of children crossing the tracks than for adults; and where the court's instructions defining ordinary care fairly submit the rule they will be held sufficient, in the absence of a request for something more specific.

**Same.** Where a pedestrian, although a child, has crossed the track
3    of a street railway and is moving out of the zone of danger, an exercise of reasonable care does not require the motorman to slacken the speed or stop the car, unless from the actions of the child it is reasonably apparent that he is about to recross the track dangerously near the car.

**Same:** REFUSAL TO INSTRUCT. Where a pedestrian had crossed the
4    street car tracks and was struck by the handhold of the side of the car and thrown between the trucks, refusal to instruct with reference to the duty of defendant to equip its cars with fenders was without prejudice.

*Appeal from Webster District Court.*— HON. J. R. WHITAKER, Judge.

FRIDAY, MAY 18, 1906.

Supplemental Opinion, Thursday, February 14, 1907.

PLAINTIFF's intestate, John F. Hanley, was killed by being run against and upon by a street car operated by the defendant company in the city of Ft. Dodge, and this action is brought by plaintiff as administrator to recover damages. The trial resulted in a verdict and judgment in favor of defendant, and plaintiff appeals.— *Affirmed.*

*J. D. F. Smith* and *Wright & Nugent*, for appellant.

*Healy Bros. & Kelleher,* for appellee.

BISHOP, J.— Defendant's line of street railway crosses a small public park situated in the heart of the city of Ft. Dodge, the track running east and west.   On the afternoon of May 24, 1902, plaintiff's intestate, a boy about four years of age, while playing in the park was struck by a west-bound car and instantly killed.   The action is bottomed on negligence, and the grounds set out in the petition are in substance:   (1) That the car which struck the child was being operated at a high and dangerous rate of speed; (2) that the car was not in charge of a careful and competent person; (3) that the person in charge of the car had left his post of duty, and at the time of the accident the car was allowed to move along the track without being under control and with no person acting as a lookout to guard against accidents; (4) that the car was not properly equipped with brakes and safety devices to prevent accidents; (5) that the person in charge of the car failed to stop same before it struck the person of the child.

I.   In stating the case to the jury, the court made no reference to the matter of the rate of speed at which the car was being operated.   So too, nothing was said upon the subject of the competency of the person operating the car, or upon the subject of the efficiency of the brakes on the car.   The complaint by appellant that herein was prejudicial error is without force in view of the record.   As to the rate of speed, the only witness for plaintiff who expressed himself on the subject testified that the rate was between four and five miles an hour, while the witnesses for defendant were agreed that the rate did not exceed six miles an hour.   The jury in response to a special interrogatory submitted by the court found that the rate of speed was four miles an hour.   Counsel for appellant do not

1. SUBMISSION OF ISSUES.

contend in argument that four miles an hour, or, for that matter, six miles an hour, is a high or dangerous rate of speed.    And such could not well be contended for.    Within common knowledge a sprightly man walks at the rate of about four miles an hour, and it could not well be considered that the operation of a car at any rate of speed testified to, on open ground and in a district free from congestion, was unreasonably dangerous.

As to the matter of the competency of the person in charge of the car, if it could be said that the record contains any evidence whatever on the subject, still it remains to be said that from any point of view possible under the circumstances, the accident could not be attributed to a want of competency.

As to the car brake, there was no evidence tending to show that it was other than such as are in general use, or that it was deficient either in construction or for want of repair.    It is familiar doctrine that an issue in respect of which there is no evidence or upon which a recovery could not be had in any event should not be submitted to the jury. *Podhaisky v. Cedar Rapids,* 106 Iowa, 543; 11 Ency. Pl. & Pr. 168.

II.    In the fourth instruction, the jury was told that by negligence was meant a failure to exercise ordinary care; and ordinary care was defined to be that degree of care, cau-

2. STREET RAIL-
WAYS: personal
injury: ordi-
nary care:
instructions.

tion, and prudence that a reasonably careful, cautious, and prudent man would exercise under similar circumstances.    Further, in the fifth instruction, it was said to be " the duty of the employé of defendant operating the car to be on the watch, and keep a lookout for persons on or near the track or approaching the same; and if you find by the evidence that the person operating the defendant's car did not exercise ordinary care in keeping a proper lookout for persons on or near the tracks, and such failure resulted directly in the killing of the boy, and he was not guilty of contributory negli-

gence, then the plaintiff is liable," etc. Counsel for appellant concede that such instruction would not have been open to criticism had the accident occurred to a person *sui juris*. It is the argument that " ordinary care is not the criterion where the life of an infant four years old is involved." We do not so understand the law. The test of negligence in all such cases is ordinary care, or, as the same thought is frequently expressed, reasonable care. True, that which would be regarded as ordinary care in one case might fall far short of answering the test in another. The varying conditions and circumstances are to be considered and these properly enough take in the age, apparent want of understanding, etc., of the complaining party. From this, and naturally enough, it follows that the expression is to be given interpretation in the light of and as dictated by the peculiar circumstances of each case as it presents itself. And in each case the ultimate question is, did the person complained of act as a person of ordinary prudence and care would have acted under like or similar circumstances? *Galloway v. Railway,* 87 Iowa, 458; *Murphy v. Railway,* 38 Iowa, 539; *Rusch v. Davenport,* 6 Iowa, 443; *Barry v. Railway,* 119 Iowa, 62; *Gorman's Adm'r v. Railway,* 24 Ky. Law, 1938 (72 S. W. 760). In the case last cited it was said:

Appellant complains because a higher degree of care was not required of the motorman. He argues that as to young children, a different and higher degree of care is owing than is to adults under similar circumstances. We believe that is true. We are also of the opinion that the instruction given by the court defining " ordinary care " fairly submitted that idea to the jury, viz.: " Ordinary care means the degree of care usually exercised by ordinarily careful and prudent persons under the same or similar circumstances. Negligence is the failure to exercise ordinary care." It might be impossible to lay down a general rule that would aptly and minutely define the care to be exercised under every conceivable state of case. Nor would

it be wise to attempt it. What would amount to ordinary care toward an adult, under similar circumstances, might be criminal negligence towards an infant of very tender years. So where the jury were instructed that the motorman must regulate his conduct in operating the care by the standard of conduct and caution usually exercised by ordinary careful and prudent persons in operating electric cars in such neighborhoods where small children were likely to be upon the streets, his full legal duty was stated.

If as contended for by counsel for appellant, and with much force of reasoning, the tendency following the use of the expression " ordinary care " without further explanation would be to mislead the jury " by leading them to suppose that the street railway company discharges its duty to children on the street by extending to them the care which ordinary persons use under ordinary circumstances," still we think every requirement was met in this case by the giving of the sixth instruction wherein it was said to be the duty of the person operating the car in question " to use ordinary care and diligence in doing all he reasonably could with the appliances at hand after it was reasonably apparent, or would have been to a reasonably prudent and cautious man, that the child was about to cross the track in front of his car at such place or in such manner that it was reasonably probable that, unless the speed of the car was checked or the car stopped, the car would collide with the child, to slacken the speed or stop the car to prevent a collision with such child." At least, if this was not sufficiently explicit, plaintiff should have requested a further instruction on the subject, and this he did not do. *Duncombe v. Powers,* 75 Iowa, 185; *Trumble v. Happy,* 114 Iowa, 624.

III. The eighth instruction given by the court was as follows: " And in this connection you are told that if you find from the evidence that the employé of the defendant company who was operating the car, saw the child, John F. Hanley, cross the track in front of the car, and was going in a direction that would carry him

3. SAME.

out of danger of collision with the car, as it would appear to
a reasonably prudent man under the facts and circumstances
then existing, including and taking into consideration the
size of the child, then the said operator had the right to pre-
sume that the child was not in apparent danger and would
not be required under the law, to slacken the speed of the
car, or stop it, until from the actions of the child it was
reasonably apparent to said operator, or would have been
so to a reasonably cautious man under the same circum-
stances, that the child was intending to recross the track
dangerously near the car." It is said that here was error
because no presumption such as the instruction allows can be
indulged in as against a child of the age of four years. In
our view this cannot be true. Without doubt the dictates
of ordinary care demand increased watchfulness on the part
of a motorman when operating his car along a street, or over
public places where children are accustomed to play. But
where the presence of a child is observed, and as the car ap-
proaches, such child, having crossed the track, is moving
away from the zone of danger, there can be no reason why
the motorman may not presume that he may go forward with
his car in safety. To say otherwise would be to forbid in a
practical sense the operation of cars along such streets and
over such places. True enough, it is possible that a child
situated as implied in the instruction may suddenly change
his course and dart back toward, or upon the track. But
there is no consideration of ordinary care that makes re-
quirement of the motorman that he presume that such will
occur. The presumption is the other way. The rule is thus
stated by Judge Thompson: "But, in general he (the mo-
torman) is not bound to take special precautions because
children are at play in the vicinity of the track, where their
proximity is not apparently dangerous, and where they
evince no purpose of thrusting themselves into danger. For
example, the gripman of a cable car, proceeding at the rate of
12 miles an hour, who sees children playing in the roadway

of the street near the curbstone, is not bound to anticipate that one of them will run suddenly in front of the car, and is not blameworthy because he does not slacken speed in anticipation of such a possibility." 2 Thompson, Negligence, section 1428. And see the cases cited in the note. The following cases cited and relied on by counsel for appellant are not in point. *Railway v. Pitzer,* 109 Ind. 179 (6 N. E. 310, 10 N. E. 70, 58 Am. Rep. 387) ; *Wallace v. Railway,* 26 Or. 174 (37 Pac. 477, 25 L. R. A. 663).

Plaintiff requested that the jury be instructed with reference to the duty of the defendant company in respect of the equipment of its car with a safety appliance commonly

4. SAME: refusal to instruct.

known as a " fender," and such request as presented was refused. On its own motion, however, the court gave an instruction to the jury on the subject. Error is predicated on the refusal to instruct as requested, and also on the instruction as given. We shall not attempt to follow counsel in his argument addressed to the subject in general. It is sufficient in disposing of the contention to say that in respect of the immediate circumstances of the accident the record makes it appear without any substantial contradiction that at the time plaintiff's intestate was reached by the car he had passed over the track; that the boy was struck by a rod, called a handhold, fastened to the side of the car near the end and designed to be used by passengers in getting on and off the car; that the effect of the impact was to throw the boy around so that in falling his head struck the rail between the front and rear wheel of the car, and death was caused by his being run upon and over by such rear wheel. Now, as to a fender the record makes it clear that the sole purpose and use thereof is to protect or save from harm a person on the track in front of a moving car. Not only are the conclusions thus expressed dictated by our reading, but the subject-matter involved must be regarded as foreclosed by the answers made by the jury to special interrogatories submitted to them, and which an-

swers are in harmony with our conclusions. This being the
condition of the record, there was no error in refusing the
request, and the court may very well have omitted any ref-
erence to the subject of fenders in the instructions given to
the jury. And from this it follows that the error in the
instruction given as pointed out by counsel, if such it be,
was without prejudice.

Error is assigned because of the special interrogatories
submitted to the jury by the court on its own motion. We
need not set them out in detail. Suffice it to say that the
interrogatories were in proper form and addressed to fact
questions fairly within the issues. We think there was no
error.

It is earnestly contended by counsel for appellant that
the court erred in overruling his motion to set aside the
verdict and to grant a new trial, for that the verdict was
not warranted by and was contrary to the evidence. We
have separately read the record, and we have had the benefit
of oral argument at the bar as well as extended and carefully
prepared arguments in print, and our consideration leads
us to the conclusion that the contention cannot be sustained.
The jury had warrant in the evidence to conclude that the
car was moving at a reasonable rate of speed and was under
control of the motorman and that the latter was keeping a
proper lookout that as the car approached the boy was in a
place of safety when suddenly he turned and ran across the
track; that there was not sufficient intervening space to en-
able the motorman to stop his car in time to avoid the acci-
dent although he made every reasonable effort to do so; that
the boy failed to get far enough away from the track to
escape being struck by the handhold on the side of the car
and thus thrown around under the wheel of the car. This
being true the verdict may not be interfered with.

Finding no error in the record, the judgment is *af-
firmed*.

Supplemental Opinion on rehearing.

BISHOP, J.— In a petition for rehearing complaint is made of the conclusion reached in the fourth paragraph of the original opinion.   It is now insisted that, although the boy was outside the track rail when he was struck by the car, still, as he had immediately prior thereto crossed over the track, there was room for a finding that, had the car been provided with a fender, he would have been caught up by such fender and the fatal accident thus have been averted. The possibility that the accident might have taken such a turn may be conceded; this, of course, on the hypothesis that, as the boy passed over the track, the car was sufficiently close that the fender would have caught him.   But there is no direct evidence to sustain such hypothesis.   And if there was, it remains to be said that the record is free from error. Reading again the instructions given by the court, we are satisfied that they go as far as plaintiff had any right to expect.   The jury was distinctly told that " it was the duty of defendant to exercise ordinary care in equipping its car with such reasonable fenders or appliances that were at that time in general use in the operation of cars in similar localities to prevent injury to persons;  .  .  .  and if you find that defendant was guilty of negligence in that respect, and that the said John F. Hanley was killed as a direct result thereof,  .  .  .  then the plaintiff is entitled to recover," etc.   Other instructions, explanatory of the subject and correct in principle, followed.

The petition for rehearing is denied, and the conclusion of the main opinion is adhered to.   *Affirmed.*