James McCormick, Appellant, v. Ottumwa Railway & Light Co., Appellee

Street railways: NEGLIGENCE OF MOTORMAN: EVIDENCE.  In this action
1  for injuries to plaintiff by a collision with a street car the evidence is held sufficient to take the question of the motorman's negligence to the jury.

Same: CONTRIBUTORY NEGLIGENCE: EVIDENCE.  In this case the plain-
2  tiff, whose sight and hearing were both defective, undertook to drive across a street car track in the center of a block and was struck and injured by a car approaching from the rear.  He had failed to either look or listen for a car from the rear and offered no sufficient excuse for such failure.  *Held,* that he was guilty of contributory negligence as a matter of law.

Same: CONTRIBUTORY NEGLIGENCE.  One about to cross a street rail-
3  way track along which he is traveling is required to exercise the same degree of care for his own safety as when crossing a steam railway, still the rule requiring him to stop, look and listen does not apply with the same force.

Same.  One who drives upon a street car track at a place other than
4  a street crossing, without looking for approaching cars or taking any other precaution for his own safety, is guilty of contributory negligence as a matter of law and can not recover even though injured by a car driven at an excessive rate of speed, unless the

facts bring the case within the doctrine of the last clear chance; and this is especially true if the traveler's view is obstructed on account of the construction of his vehicle or the character of his load. And this rule applies to cars approaching from the rear, although perhaps not with the same degree of strictness.

**Same:** NEGLIGENCE: LAST CLEAR CHANCE. Where, as in this case, plaintiff's negligence extended up to the very time of the accident, and the motorman upon discovering his peril stopped his car as soon as possible, there can be no recovery under the doctrine of the last clear chance, on the theory that the motorman's failure to discover plaintiff's peril sooner was the proximate cause of the injury; since on that theory the accident was the result of the concurrent negligence of both parties, precluding an application of the rule.

*Appeal from Wapello District Court.*—HON. M. A. ROBERTS, Judge.

THURSDAY, FEBRUARY 17, 1910..

ACTION at law to recover damages for injuries received by plaintiff in a collision with a street car owned and operated by defendant upon a street in the city of Ottumwa. At the conclusion of the testimony the trial court directed a jury which had been impaneled for the trial of the case to return a verdict for defendant, which was accordingly done. and plaintiff appeals.—*Affirmed.*

*Steck, Dougherty & Steck,* for appellant.

*McNett & McNett.* for appellee.

DEEMER, C. J.—While driving along what is known as North Court Street in the city of Ottumwa in a single-seated buggy, with a single horse, the said buggy was struck by one of defendant's motor cars approaching plaintiff from the rear, throwing him to the ground, and producing the injuries of which he complains. As the exact

negligence claimed is a material inquiry in the case, we quote the following from the petition:

> Plaintiff avers that said injuries were caused entirely by and through the fault and negligence of defendant company, its authorized agents, and employees, in that at said time defendant's car was running at a high and dangerous and unlawful rate of speed, to wit, at the rate of twelve to fifteen miles per hour, in violation of the ordinance of the said city of Ottumwa; that plaintiff, as well as the obstruction to plaintiff's continued passage on that side of the defendant's track on the said public street, was for blocks, in plain view of the motorman operating the said car, as also the fact that the top of plaintiff's buggy obscured the view of plaintiff to defendant's car coming on him from the rear, notwithstanding which the defendant's employees continued to run the car at the rate of speed aforesaid without seeing plaintiff, who was in plain view, and without having the car under control so as to avert the injury, as defendant was bound and required so to do and have, and failing to ring the gong or give to plaintiff any warning or notice whatever of the coming of said car, and, thus running and operating the said car, did carelessly and negligently without knowledge of plaintiff run on and against plaintiff in his buggy, wherefore and whereby plaintiff was injured as herein claimed.

I.  Plaintiff's version of the affair as given on the witness stand is substantially as follows:  He is a farmer living some distance north of the city of Ottumwa.  He came into the city on the morning of July 28, 1906, there being a circus in the town that day, and about half past six in the evening he started for his home.  After getting his horse and vehicle he came onto what is known as North Court Street, at its intersection with Washington.  Reaching Court he turned and drove north on the east side thereof, passing its intersections with what is known as Marion, Lincoln Avenue, and Ottumwa Street;

1. STREET
RAILWAYS:
negligence
of motorman
evidence.

respectively, and was approaching the junction with Maple
Avenue when he was struck by defendant's car coming
from the south. He testified that when he first came into
Court Street he looked both ways for a car, and saw none
in either direction. He claims that as he approached
Maple Avenue he saw a car coming from the north and
approaching him, and that he also noticed a wagon stand-
ing in front of a store on the southeast corner of Court
Street and Maple Avenue, and, believing that there was
not room for him to pass between this wagon and the on-
coming car, he pulled across the street car track toward
the west, and was struck by a car coming from the south.
It appears that regularly there was but one car which
ran along this street, and that the one which struck plain-
tiff's buggy was an extra put on to accommodate the circus-
day crowd. There was also testimony from which a jury
may have found that the north-bound car gave no alarm
and sounded no gong or whistle, although the testimony
on this proposition is in sharp conflict. There is also a
conflict in the testimony as to the speed at which the car
was being run. Taking that version most favorable to
plaintiff, we must assume that it was going somewhat faster
than six miles per hour just before it struck the plaintiff's
rig. Giving to the testimony, as we must, its most favor-
able aspect for plaintiff, we are constrained to hold that
there was enough evidence of defendant's negligence as
charged to take the case to the jury.

II. It also appears from the testimony that plain-
tiff's eyesight and hearing are both defective, that he did
not, after coming into Court Street, look to the rear and
south again until he was struck by the
car, and that he traveled north from nine
hundred to one thousand feet after getting
onto Court Street. Had he looked back at or near the
point where he was struck he could have seen a car for a
distance of at least nine hundred feet. He was not struck

2. SAME:
contributory
negligence:
evidence.

at a street crossing but at a point between Ottumwa Street and Maple Avenue, and had he continued driving north on the east side of the street railway track he would have been in no danger from either car. The car going south was approaching a side track, which it took, or was to take, to allow the north-bound one to pass, and was running slowly toward the south when the collision occurred. The distance from Washington Street, where plaintiff turned onto Court, to the intersection of Court with Maple Avenue was approximately one thousand feet. Plaintiff was perfectly familiar with the street, having traveled the same as he said forty times a year, and had frequently passed street cars thereon. He knew of the switch, and according to the testimony must have driven north on Court Street, and on the east side thereof, for nearly nine hundred feet before he drove upon the street car tracks, and was struck by the car. It is conceded that from the time he reached Court Street until he was struck by the car he did not look back to see if a car was coming, nor did he listen or take any of the usual precautions before going upon the track. He saw the south-bound car approaching the siding, which to our minds is a material circumstance, and, without looking to the rear, suddenly drove upon the street car track and was struck by the north-bound car. We here quote from plaintiff's testimony the following:

Q. You say when you crossed Washington Street you looked? A. I looked both ways. Q. And from that time until the accident happened did you look back? A. No, sir. Q. Did you look back at any time? A. No, not back. Q. Now, I want you to answer this question, did you, after you got onto Court Street from Washington Street, while you were going north, try or attempt to look back to ascertain whether there was any car coming from the south until a very few seconds before the accident? Answer that by "Yes" or "No." A. No.

As heretofore stated there was, according to some of the testimony a wagon standing in front of a grocery store at the southeast corner of Court Street and Maple Avenue, and plaintiff claims that to pass around this wagon he pulled toward the street car track, intending to cross over and let the south-bound car pass him. He must have attempted to cross the track something like one hundred feet south of the wagon, which he claims was so situated as to prevent his passing between the wagon and a street car should it come along while he was attempting to pass the wagon. The excuse offered by plaintiff for his failure to look back or listen before going upon the track is that he thought there was but one car upon the line, and because he saw the one approaching the switch, coming from the north, he inferred that this was the only car upon the line, and that there could not be another coming from the south. The testimony shows, however, that it was not unusual to run two cars on this line. The exact testimony upon this point is that whenever large crowds of people were moving, such as Sundays and circus days, two cars were run upon this line. The presence of the switch which the south-bound car was approaching was notice to plaintiff that there was or might be use for it, and as no other use could be suggested under the record than for the passing of cars, this fact is a most material circumstance to be considered in disposing of the case.

Plaintiff's account as to how the accident occurred we state as it appears in the record:

About one hundred feet from where this wagon was I started to cross the track, as I could not go between the wagon and the car track. I started in an angling way for about thirty feet. . . . The street was paved. I was driving along about six feet from the track until I got within thirty feet of where I was struck, and started angling across the track. . . : I was about six feet from the rail before I commenced drawing in the thirty feet from the place of the accident. . . . After I

crossed the track at Washington Street I looked both ways; there was a turnout beyond Maple Avenue. That's where the team was standing. Car going north passed the car going south there. After I got to Court Street I observed a car coming south on Court Street, after I got to the top of the hill. I was about halfway from the top of the hill to the place of the accident when I saw the car. Traveled slow trot on Court Street. . . . I saw a car coming south just north of the switch a little piece. The car had not stopped that I knew of it. The car was not stopped on the switch that I saw. The car was right on me before I saw it. It struck the left hind wheel of my buggy. . . . Did not look back for car after going on Court Street. The buggy top was too high, and I was looking ahead at that car when I saw it. Q. Well, you say when you got onto the car track, at any rate the car was on you? A. Yes, sir. Q. I believe you said not over fifteen or twenty feet from—How many feet was the car from you when you got onto the track? A. Well, I do not know. Q. Well, you have said to the jury that it seemed to be right on you, how many feet would you say it was away from you, ten or fifteen feet away? A. It looked to me like it was only two or three feet.

This testimony convinces us that plaintiff was, as a matter of law, guilty of contributory negligence. His eyesight was bad, and his hearing defective. He did not, before attempting to cross the track, take any of the usual precautions for his own safety; he neither looked nor listened, and his only excuse for not doing so is, that, as there was a car approaching the switch from the north, he thought there could be no other from the south. The presence of the switch was, however, notice to him that another car might be approaching from the south, and surely called for some vigilance on his part. Now while the "degree of care" required of one who is about to cross a street railway track along which he is traveling is practically the same as where one is about to cross a steam railway cross-

3. SAME: contributory negligence.

ing, yet it is quite generally held that, on account of the
methods of operating and the measure of control which
the street railway has over its cars and trains being so
different from that which obtains in the management of
steam railways, what would constitute ordinary and rea-
sonable care in the one case would not in the other; that
is to say, the strict rule as to stopping, looking, and lis-
tening does not apply with the same force where one is
about to cross a street railway track as where one is ap-
proaching, and is about to cross a steam railway track.
See *Orr v. R. R. Co.*, 94 Iowa, 426; *Perjue v. Light &
Gas Co.*, 131 Iowa, 710; *Beem v. R. R. Co.*, 104 Iowa,
565; *Barry v. R. R. Co.*, 119 Iowa, 62; *Doherty v. R. R.
Co.*, 137 Iowa, 364; *Doran v. R. R. Co.*, 117 Iowa, 447.

Yet it has never been held that one may heedlessly
and without giving attention to his surroundings drive
upon a street railway track.   He is bound to the use of
ordinary and reasonable care on his part.

4. Same.     It has frequently been held, and the authori-
ties are practically unanimous on the proposition, that if
the driver of a buggy or wagon drives upon a street rail-
way track at a place other than a street crossing without
looking for approaching cars or taking any other precau-
tions for his own safety, he is guilty of contributory neg-
ligence as a matter of law, and can not recover, even though
the car be driven at an excessive rate of speed, unless the
facts shown bring the case within the doctrine of what is
known as the "last clear chance." *Highland Co. v. Samp-
son*, 91 Ala. 560 (8 South. 778), s. c. 112 Ala. 425 (20
South. 566); *Citizens' R. R. v. Helvie*, 22 Ind. App. 515
(53 N. E. 191); *Hurley v. West End Co.*, 180 Mass. 370
(62 N. E. 263); *Wood v. City Ry. Co.*, 52 Mich. 402
(18 N. W. 124, 50 Am. Rep. 259); *Wosika v. City Ry.
Co.*, 80 Minn. 364 (83 N. W. 386); *Carson v. Ry. Co.*
147 Pa. 219 (23 Atl. 369, 15 L. R. A. 257, 30 Am. St.
Rep. 727); *Beerman v. Ry. Co.*, 24 R. I. 275; (52 Atl.

1090); *Burns v. St. Ry. Co.*, 66 Kan. 188 (71 Pac. 244); *Lockwood v. Ry. Co.*, 92 Wis. 97 (65 N. W. 866). And it is also the general rule that if the driver's view be obstructed on account of the construction of his vehicle, or by reason of its load, the case is still stronger against him. *Omslaer v. Traction Co.*, 168 Pa. 519 (32 Atl. 50, 47 Am. St. Rep. 901; *Kelly v. St. Ry. Co.*, 175 Mass. 331 (56 N. E. 285); *Solatinow v. St. Ry. Co.*, 70 N. J. Law 154 (56 Atl. 235); *Helber v. St. Ry.*, 22 Wash. 319 (61 Pac. 40); *Boerth v. Ry. Co.*, 87 Wis. 288 (58 N. W. 376). These rules are generally held to apply, although, perhaps, not with the same degree of strictness, to cars coming from the rear. *Adolph v. R. R.*, 76 N. Y. 530; *Kupferschmid v. Ry. Co.*, 70 Mo. App. 438; *Cawley v. Ry. Co.*, 106 Wis. 239 (82 N. W. 197); *Steam Baking Co. v. St. Ry. Co.*, 4 Neb. (Unof.) 396 (94 N. W. 553).

Now it will be noticed from the foregoing recitation of facts that plaintiff drove upon and across the track where he was struck without looking back to ascertain whether or not there was a car coming from the south, without listening and without taking any precautions whatever to know if there was a car coming from that direction. His excuse, which has heretofore been stated, is not sufficient to relieve him from his failure to exercise some care to protect himself from injury from an approaching car. He had driven along the street parallel with the street car track for from nine hundred to one thousand feet without looking back or listening to see or to know whether or not a car was coming from that direction. The fact that the car coming from the north was evidently going upon the switch was sufficient to suggest that there might be another car coming from the south. In view of this record we are united in the conclusion that plaintiff by his own negligence contributed to the injury of which he complains. The following cases from other States are clearly in point upon this proposition: *Davidson v. Tramway Co.*, 4 Colo.

App. 283 (35 Pac. 920; *McClellan v. Electric Ry. Co.*, 110 Wis. 326 (85 N. W. 1018); *McGauley v. Transit Co.*, 179 Mo. 583 (79 S. W. 461); *Stafford v. Ry. Co.* 110 Wis. 331 (85 N. W. 1036); *Fritz v. St. Ry. Co.*, 105 Mich. 50 (62 N. W. 1007); *Blakeslee v. Consolidated St. Ry. Co.*, 105 Mich. 462 (63 N. W. 401). Our conclusions also find support in *Ames v. Transit Co.*, 120 Iowa, 640; *Beem v. Electric Co.*, 104 Iowa, 563. So much upon the question of contributory negligence.

III.    Counsel insist that the case involves the doctrine of what is now generally known as "the last clear chance," and that, notwithstanding plaintiff's negligence, he is entitled to recover, for the reason that such negligence was not the proximate cause of the injury, and is no defense to an action based upon the negligence of the motorneer of the car after he knew, or might have known, of plaintiff's negligence.    This rule is easily stated, but in its application many difficult and troublesome questions arise.    The general statement of the doctrine is as follows:    "The party who has the last opportunity of avoiding an accident is not excused by the negligence of any one else.    His negligence and not that of the one first in fault is the proximate cause of the injury."    Again it has been stated in this way: "Where both parties are negligent, the one that has the last clear opportunity to avoid the accident, notwithstanding negligence of the other, is solely responsible for it; his negligence being deemed the direct and proximate cause of it."    The rule is bottomed sometimes upon one proposition, and sometimes upon another, and sometimes upon both. ᐧ The first is that in such cases defendant's negligence, instead of being concurrent, is the sole and proximate cause of the injury, and the other is that plaintiff's negligence is no defense to wanton or willful negligence.    When bottomed solely upon the last proposition, to wit, wantonness or willfulnes, it is apparent that

5. Same: negligence: last clear chance.

something more than the want of ordinary care is necessary. The injury must either be willful or, as said in some cases, be due to such gross negligence as that wantonness or willfulness may be inferred. When bottomed upon the former proposition—that is to say, upon the doctrine that defendant's negligence, being last in point of time, is the proximate, and plaintiff's precedent negligence the remote, cause—neither wantonness or willfulness nor their equivalent need be shown. But it must appear in such cases that plaintiff's and defendant's negligence are not concurrent in point of time. If concurrent in this sense then there can be no recovery, save where the rule of comparative negligence obtains.

We have adopted the last fair chance doctrine for this State, and have planted it upon the proposition, as originally announced, that he who has the last opportunity of avoiding an accident is not excused by the negligence of any one else; his negligence being deemed the approximate cause of the injury. In the application of this rule we have held that if plaintiff's negligence concurs in point of time with that of the defendant, then, in the absence of proof of wantonness or willfulness, plaintiff can not recover. For example, if a motorneer sees one upon a railway track and in a position of peril, and does nothing to stop his car so as to avoid injury, which he might have done had he exercised the care required of him, it is no defense to an action against him, by the injured party, that he (the party injured) was guilty of negligence in going upon the track. On the other hand, if one goes upon a track ahead of a moving car, and continues to travel thereon without taking any precaution for his own safety, and his negligence continues down to the very time he is struck by a moving car, he can not recover, unless he shows that the employee in charge of the car saw him and knew, or, as some of the cases put it, should have seen him and knew or should have known that he was in a place

of peril. Ordinarily, however, if the employee does not see one who has negligently gone upon the track in front of his car, his negligence in not keeping a lookout, unless it be in exceptional cases, being nothing more than the want of ordinary care concurring with that of the injured plaintiff, it does not render the master liable. We are not to be understood at this time as holding that failure to see, which is due to the negligence of an employee, is the equivalent of knowledge on his part, for that question is not before us. It is certainly true, however, that as bearing upon the question of whether or not he did see, his duty to be on the lookout for persons who may rightfully be upon the track is evidence of the fact that he did in fact see the party injured. As applied to the facts of this case, this is all that need be definitely announced at this time. These statements are justified, we think, from our previous cases, and, perhaps, suggest the solution of some apparently conflicting statements in the opinions heretofore announced by this court. See, as sustaining these views, *Doherty v. Railway Co.*, 137 Iowa, 363; *Orr v. Ry. Co.*, 94 Iowa, 423; *Morris v. Railway*, 45 Iowa, 29; *Deeds v. Ry. Co.*, 69 Iowa, 164; *Romick v. Ry. Co.*, 62 Iowa, 167; *Spencer v. Ry. Co.*, 29 Iowa, 55; *Keefe v. Ry. Co.*, 92 Iowa, 182; *O'Keefe v. Ry. Co.*, 32 Iowa, 468; *Sutzin v. Ry. Co.*, 95 Iowa, 304, at pages 308 and 312; *Goodrich v. Ry. Co.*, 103 Iowa, 418; *Kelsey v. Ry. Co.*, 106 Iowa, 253; *Kelley v. R. Co.*, 118 Iowa, 392; *Barry v. St. Ry. Co.*, 119 Iowa, 64; *Gregory v. Ry. Co.*, 126 Iowa, 238; *Hughes v. Ry. Co.*, 128 Iowa, 214; *Clemans v. Ry. Co.*, 128 Iowa, 396; *Earl v. Ry. Co.*, 109 Iowa, 18; *Campbell v. Ry. Co.*, 124 Iowa, 309. We shall not take the time nor space necessary to review these cases. It is enough to deduce what we believe to be the doctrines announced therein.

Going now to the record for the facts, we find that plaintiff was driving along a street on a trot between two

intersecting streets on the east of the street railway track, and at a safe distance therefrom; that as he approached a car coming from the north, he suddenly, and without previous notice, pulled his horse out upon the railway track, either obliquely or almost at right angles, and while in this position was struck by a car coming from the rear. The fender of the car struck the left rear wheel of the buggy as it angled across the track, but there is no evidence that either the buggy or the fender was damaged, and the testimony shows that the car did not go more than five or six feet after the fender struck the buggy. Plaintiff testified, as already stated, that the car was right onto him when he got upon the track, not more than two or three feet. Other witnesses placed the distance at from ten to twenty feet, some, as we read the record, more than thirty. According to plaintiff, he started to cross the track in an angling way; others said he pulled on the left line, and turned right onto the track, and still others that he turned square, or almost square, across the track. The motorneer testified that he saw plaintiff, and that he unexpectedly drove upon the track in front of his car, and that as soon as he saw plaintiff was going upon the track, he used every appliance and stopped his car as soon as he could. There is no testimony that the car could have been stopped any sooner, and no sufficient showing of any negligence after the motorneer saw plaintiff's peril. As the car approached the plaintiff, he was in a perfectly safe place at the side of the street, and he did not get into a position of peril until he attempted to cross the track in front of the moving car. The motorneer had no reason to apprehend that plaintiff would suddenly drive upon the track in front of the moving car. Plaintiff was not obliged to cross the track in order to pass the wagon, which was a hundred or more feet from him. If he supposed, as is now indicated, that he would have to do so to let the car from the north pass him, he was choosing the most

dangerous course.  He might, if he thought the car was going on south, have waited a moment or two for it to pass instead of turning out upon the track and in front of it.  If, on the other hand, he thought it had stopped, or was about to stop, at the siding, which was not at a place for passengers to alight, he should have apprehended that there was some reason for this, and have cast his eyes to the rear before going into a place of danger.  The pivotal points here are that the motorneer had no reason to apprehend that plaintiff would leave that part of the street upon which he was then traveling—a place of safety —and without notice drive across the track and in a position of danger.  According to the uncontradicted testimony, as soon as the motorneer discovered plaintiff's peril, he used every effort to stop his car, and did so in such a way as to avoid breakage either to the car or buggy.  It is not a case for the application of the rule that the motorneer should have seen the plaintiff before he did, and that his means of knowledge is the equivalent of actual knowledge, for plaintiff's negligence continued down to the very moment of the collision.  It was as much plaintiff's duty to be on the outlook for cars upon the railway track as it was of the motorneer to be watchful of teams which might go upon the track.  In other words, in this aspect of the case the negligence of the parties was concurrent and cooperating.  This conclusion is sustained by the following, among other cases: *Omslaer v. Traction Co.*, 168 Pa. 519 (32 Atl. 50, 47 Am. St. Rep. 901); *Stafford v. Chippewa Valley Co.*, 110 Wis., 331 (85 N. W. 1036); *Christensen v. Trunk Line*, 6 Wash. 75 (32 Pac. 1018); *Hanley v. Ft. Dodge*, 133 Iowa, 333; *Davidson v. Tramway Co.*, 4 Colo. App. 283 (35 Pac. 920).

Regard must be had of the fact that the accident did not occur at a street crossing, but at a point where defendant had the superior right of way, and where the motorneer had the right to assume that plaintiff would

not place himself in a position of danger. None of the cases cited and relied upon by appellant run counter to the views herein expressed. We need not review them, as an examination will show their inapplicability. We refer more particularly to *Perjue v. Gas Co.,* 131 Iowa, 710; *Barry v. Electric Co.,* 119 Iowa, 62; *Christy v. Ry. Co.,* 126 Iowa, 428; *Powers v. Ry. Co.,* 143 Iowa, 427; *Remillard v. Traction Co.,* 138 Iowa, 565; *Stanley v. Ry. Co.,* 119 Iowa, 526—and of all of which are clearly distinguishable. We might have refused to consider the case on technical grounds, but have concluded to decide it on its merits.

Appellee's motion to strike appellant's abstract, brief, and argument is overruled.

The judgment of the trial court seems to be correct, and it is *affirmed.*