(December 22, 1913.)

## J. W. HOLMES, Respondent, v. SANDPOINT AND INTERURBAN RAILROAD CO., Appellant.

[137 Pac. 532.]

NEGLIGENCE — STREET-CAR AND AUTOMOBILE COLLISION — CONTRIBUTORY NEGLIGENCE—DUTY TO LOOK AND LISTEN—CONCURRENT RIGHTS— PUBLIC STREET—CONCURRENT NEGLIGENCE.

1. Where the evidence shows that an automobile driver backed an automobile out of a garage abutting on a street and on to the sidewalk and thence into the street and upon a street-car line which extended along the street in front of the garage, and a collision occurred between a street-car and the automobile, and an action for damages was subsequently prosecuted by the owner of the automobile against the street-car company, it was error for the trial court to instruct the jury that the driver of the automobile was not under any duty to look and listen before backing his car across the sidewalk and street and upon the street-car line.

2. Instruction given in this case examined, considered and disapproved.

3. The condition of a building which the owner of an automobile selects as his garage and the difficulty of getting into or out of the building does not excuse or justify the negligence of the owner of an automobile or his agent in driving the car out of the building without looking or listening for a street-car which runs back and forth along the street in front of such building.

4. The rights of a street-car company and the owner of an automobile are equal and concurrent in the public streets, but while

their rights are equal, they are to be measured by the manner in which they are to be exercised. The rights of the street-car company are exercised by running its cars on its track, while an automobile may be driven in any part of the street according as convenience, diligence and safety dictate or demand, but neither one has an exclusive right, and each must observe the concurrent rights of the other and of every other person who seeks to enjoy a like right within the streets, and to this end every person who would use the public streets must exercise care and diligence both for the protection of himself and his property and to prevent doing injury to any other person or property.

APPEAL from the District Court of the Eighth Judicial District for Bonner County. Hon. J. M. Flynn, Judge.

Action for damages. Judgment for plaintiff. Defendant appeals. *Reversed.*

H. H. Taylor, for Appellant.

Plaintiff was, as a matter of law, guilty of contributory negligence; he did not, before attempting to cross the track, take any of the usual precautions for his own safety; he neither looked nor listened. (*McCormick v. Ottumwa Ry. & Light Co.,* 146 Iowa, 119, 124 N. W. 889.)

It is certain that the railway company has some rights between crossings superior to its rights and those of pedestrians at crossings. (*Ashley v. Kanawha Valley Traction Co.,* 60 W. Va. 306, 55 S. E. 1016, 9 Ann. Cas. 836; *Wolfe v. City Suburban Ry. Co.,* 45 Or. 446, 72 Pac. 329; *Marden v. Portsmouth Ry. Co.,* 100 Me. 41, 109 Am. St. 476, 60 Atl. 530, 69 L. R. A. 300; *Davidson v. Denver Tramway Co.,* 4 Colo. App. 283, 35 Pac. 920.)

"A failure to listen or look, when by taking this precaution the injury might have been avoided, is negligence that will bar a recovery, notwithstanding the negligence of the railroad company in failing to give signals contributed to the injury." (*Union Pacific Ry. Co. v. Adams,* 33 Kan. 427, 6 Pac. 529; Booth on Street Railways, sec. 312; *Birmingham Ry. L. & P. Co. v. Oldham,* 141 Ala. 195, 37 So. 452, 3 Ann. Cas. 333; Nellis on Surface Railroads, 365; *Har-*

ris *v. Lincoln Traction Co.*, 78 Neb. 681, 111 N. W. 580; *Wood v. Omaha etc. St. Co.*, 84 Neb. 282, 120 N. W. 1121, 22 L. R. A., N. S., 228; *Hellieson v. Seattle Elec. Co.*, 56 Wash. 278, 105 Pac. 458; *Keefe v. Seattle Elec. Co.*, 55 Wash. 448, 104 Pac. 774.)

"If the plaintiff voluntarily goes into a place of danger without exercising the care required by law, he is guilty of negligence." (*Wheeler v. Oregon R. & Nav. Co.*, 16 Ida. 375, 102 Pac. 347; *Burrow v. Idaho & W. N. R.*, 24 Ida. 652, 135 Pac. 838.)

The court erred in giving the instruction: "The burden of proof is upon the defendant to establish that the driver of the automobile, Charles Palmer, was guilty of contributory negligence, and that such contributory negligence was the proximate cause of the collision between the street-car and the automobile." (*Burns v. Metropolitan St. Ry. Co.*, 66 Kan. 188, 71 Pac. 244.)

Under the facts, the negligence of Palmer and even of the plaintiff concurred with any negligence that might have been found on behalf of the defendant up to and including the very moment of the accident, and the rule of the last clear chance is not applicable to such a case. (*McCormick v. Ottumwa Ry. & Light Co., supra.*)

There must have been such a lack of care on behalf of the defendant as to amount to gross negligence, and thus a proof of wilful and wanton injury. (*Union Pacific Ry. Co. v. Adams*, 33 Kan. 427, 6 Pac. 529; *Helber v. Spokane St. Ry. Co.*, 22 Wash. 319, 61 Pac. 40.)

This was not a street-crossing case, and there was no duty on the motorman to stop his car on the view of an approaching vehicle until it was known to him, or should have been known to him, that the automobile was actually going upon the track or that the driver did not know of the approach of the street-car. (*Helber v. Spokane St. Ry. Co., supra; Greene v. Louisville R. Co.*, 119 Ky. 862, 84 S. W. 1154, 7 Ann. Cas. 1126, and notes; 27 Am. & Eng. Ency. of Law, 70.)

The instruction of the trial court required the motorman to stop the car the minute the automobile appeared in the

door of the building. The motorman did not owe any such duty. (*Sonnenfeld Millinery Co. v. People's Ry. Co.,* 59 Mo. App. 668.)

The court should have instructed the jury that, generally speaking, the one approaching the track "should both look and listen." (*Pilmer v. Boise Traction,* 14 Ida. 327, 125 Am. St. 161, 94 Pac. 432, 15 L. R. A., N. S., 254.)

Instruction No. 15 was contrary to the law, as both the negligence of the plaintiff and that of the defendant might be a proximate cause; there might have been a joinder of proximate causes and there could have been more than one proximate cause. (*Johnson v. North Western Tel. Exch. Co.,* 48 Minn. 433, 51 N. W. 225, at 226; *Gunter v. Graniteville Mfg. Co.,* 15 S. C. 443; *Bigelow v. Danielson,* 102 Wis. 470, 78 N. W. 599.)

The refusal of instruction "C" was error. The rights of the parties are equal at the crossings (*Jones v. Toronto etc. Ry. Co.,* 25 Ont. L. Rep. 158, Ann. Cas. 1912C, 1070; *Knox v. North Jersey St. Ry. Co.,* 70 N. J. L. 347, 1 Ann. Cas. 164, 57 Atl. 423; *Blake v. Rhode Island Co.,* 32 R. I. 213, Ann. Cas. 1912D, 854, 78 Atl. 834), and the rights of the street-car are equal or superior between crossings. The refusal of instruction "D" was error. This instruction is approved in form by Sackett, No. 2107, 1389, and was approved in *South Chicago C. Ry. Co. v. Kinnare,* 216 Ill. 451, 75 N. E. 179.

G. H. Martin and Myrvin Davis, for Respondent.

It is not negligence as a matter of law for a person to undertake to cross a street railway without looking and listening. Whether a person is guilty of contributory negligence by going upon a street railway track without looking and listening, and whether that is the proximate cause of the injury, is a question for the jury to determine under all the facts and circumstances proved in the case.

Though a person be contributorily negligent in going upon a street railway track, yet if the motorman in charge of said

railway car discovered that person upon the track or about to go thereon in time to stop the car and avoid injury, it is the duty of the motorman to use every effort possible to stop the car and prevent the injury, and if he fails to do so and the evidence shows that he might have done so, the railway company will be responsible for the injury. (*Pilmer v. Boise Traction Co.*, 14 Ida. 327, 125 Am. St. 161, 94 Pac. 432, 15 L. R. A., N. S., 254; Shearman & Redfield on Negligence, 6th ed., secs. 485aa, 485ab, 485ba, 485c and 99; Elliott on Railroads, 2d ed., secs. 1096cb, 1096cd, 1096cs, 1096ci, 1096cj, 1096co, and 1096cq, and the cases cited in the Pilmer case; *Kramm v. Stockton etc. R. Co.*, 3 Cal. App. 606, 86 Pac. 738, 903; *Anderson v. Great Northern Ry. Co.*, 15 Ida. 513, 99 Pac. 91; *Rippetoe v. Feely*, 20 Ida. 619, 119 Pac. 465.)

Instruction No. 15 is identical with one that was given and approved in the case of *Roanoke etc. Co. v. Young*, 108 Va. 783, 15 Ann. Cas. 946, 62 S. E. 961, 946, and the giving thereof in connection with the other instructions in this case was clearly not error.

AILSHIE, C. J.—This is a case where the plaintiff recovered judgment against the railway company for damages caused by the defendant's car striking plaintiff's automobile and injuring the same. The defendant has appealed from the judgment.

Charles Palmer, who was driving an automobile for respondent, was backing the machine out of a building that was abutting on the street and which was used by respondent as a garage, and ran in on to the street-car line, and appellant's car, which was then passing, struck the machine and pushed it along the course of the track for forty feet before stopping and left the automobile in a damaged condition. The evidence shows that the building in which the machine was kept extends up to the sidewalk and that the sidewalk in front of the building is about eight feet wide and that there is an abrupt drop from the door of the building to the sidewalk of about eight inches, and from the sidewalk to the

street a slight declination and then a rise toward the center of the street and that the distance is twenty-three feet from the door of the building to the street-car track. The driver describes the building and mode of getting out as follows:

"Q. Will you tell the jury how the approach to the entrance of the building is constructed? Tell them how the lay of the land is there over which the machine had to run in taking it out of the building.

"A. In coming in or going out the building, you come off of the track, make a little dip down, then come up on the sidewalk, a raise of four or five inches, then cross the sidewalk on a raise again of about eight inches to come into the door. That is a very steep jump-off there, the eight inches it is almost down, just a little point let down, to roll down here, roll up here; then you have got to make a turn right in the door, because the door is not quite straight with the road—you have got to make a turn in the door as you come out or going in, either one.

"Q. How much wider is that doorway or entrance, how much wider was it at that time than the automobile?

"A. You have about six inches on each side of the automobile—clearance—that is in the door, between the doors.

"Q. How wide is this board that was laid in order to run the automobile up and down over the door sill, or rather how long was that board with reference to the width of the automobile?

"A. Six foot, three inches.

"Q. How much longer than the width of the automobile was it?

"A. If you hit it straight, you have got about three inches on each side of the automobile."

Palmer, the auto driver, was in the machine operating it and backing it out on to the street, and the respondent, the owner of the machine, was standing close by and was in the doorway at the time of the accident. Palmer, in relating what he did and how he backed the car out, testified:

"Q. Did you look for anything at all when you were backing out of there?

"A. Just getting out, that was all.

"Q. You were not watching the street-car track?

"A. No, sir.

"Q. Nor the street-cars?

"A. No, sir, I hadn't time to look at only my machine.

"Q. If you had started out of there and gotten out of the door with the rear wheels, could you stop your car at any place that you wanted?

"A. I could have stopped it within six inches at any place that I wanted.

"Q. Therefore you did not stop it?

"A. I did not; no.

"Q. Did you look until you were squarely upon the track for a street-car at all?

"A. No, sir.

"Q. Did anybody else look for you?

"A. I heard somebody holler; that is the reason I looked up then.

"Q. Who hollered?

"A. I could not say; I think it was Mr. Holmes."

It appears that the street-car line is operated on a regular schedule and that the car that struck the auto was running on about schedule time. It seems that the street-car was being operated by only one man who was serving as motorman and conductor. There is conflict in the evidence as to just where he was or what he was doing at the time the car was first seen by those who were near to or in the vicinity of the automobile. The motorman testifies that he began to slow down and stop his car as soon as he saw that the automobile was going to run on to the track and that he stopped the car as soon as it was possible to do so. It is admitted that the driver of the automobile did not at any time look for the street-car or pay any attention to that until the respondent warned him to look out, which was only a second before the collision.

It has been most strenuously urged that the evidence in this case is not sufficient to support a verdict and judgment in favor of the respondent. We have concluded, how-

ever, not to pass upon the question of the sufficiency of the evidence, for the reason that the judgment in this case must be reversed on account of erroneous instructions given to the jury with which we will deal presently.

It appears to us that the jury must have been misled in at least one material issue in the case, by reason of the error contained in instruction No. 12 given by the court to the jury. Instruction No. 12 is as follows:

"The court instructs the jury that a person using a public street, such as the street in front of the Molyneux Building, and a street railway have equal rights in the street, and a person using such street is warranted in presuming that said railway company, or those in charge of the operation of its cars, will use ordinary care and prudence to avoid injuring such person while using the street, and *it was not negligence in law for Charles Palmer to back the automobile in controversy in this case out of said building into the street, nor was it his duty to look and listen before doing so,* and if you find in this case that the motorman in charge of the defendant's car which struck said automobile saw the danger of a collision while he was a sufficient distance away to stop the car and prevent the collision, it was his duty to stop the car, and if you find that a competent motorman at his post of duty in charge of a car properly equipped with proper appliances for stopping cars speedily in cases of emergency could have stopped the car in time to prevent said collision after the motorman saw, or should have seen, the danger of collision, then your verdict must be for the plaintiff. It is for you to determine from the evidence whether Palmer was negligent in failing to look or listen for an approaching car and in determining this question, the rule is whether men of ordinary prudence, exercising ordinary care and prudence, would have so acted under similar circumstances."

The italicized part of the foregoing instruction was clearly erroneous and no doubt had the tendency to at least withdraw the attention of the jury from the negligence of the driver of the automobile, and left the case in the minds

of the jury as though the plaintiff in the case were guilty of no negligence whatever in connection with the accident. The evidence of the witness Palmer, as hereinbefore set out, shows beyond any doubt that he was guilty of negligence and carelessness. He testifies, and apparently attempts to justify his action thereby, that he never looked at any time for the street-car or paid any attention to it, but that, on the contrary, *he had to pay all his attention to the machine that he was trying to get out of the building.* The very fact that a street-car line ran along the street in front of this garage imposed the duty upon one who was backing a machine out on to the street to keep in mind the fact that a street-car line was there and that a car was likely at any time to pass, and that if he ran the car on to the track he was taking chances unless he first observed a clear track. The fact that the building or the opening to the building was so small that it required all the attention of the driver to his auto, so that he could not give any attention to what was going on back of him or in the street, does not excuse his failure to look and take observations. The railroad company did not select the garage and are not responsible for its dimensions or the difficulty of getting in and out with the car. If the owner of the machine saw fit to use that kind of a place, he and he alone must assume the risks incident to getting in and out of such place. The driver says that he was moving the machine at a speed of not to exceed one and a half or two miles per hour, or about two feet per second of time, and that he could have stopped it within six inches at any time. The street-car was running at a speed of from eight to nine miles per hour or from five to six times as fast as the auto. Even had the motorman seen the auto moving toward the track, under these circumstances it would at least be a question of fact which should go to the jury as to whether he was not justified in assuming that the car would stop before it got on the track and before the approach of the street-car. We are utterly unable to understand how it was possible for either the respondent or his driver to assume for a moment that they had a right to back that car out of the garage

across the sidewalk and across the street without ever looking back to see whether a pedestrian, team or street-car might be passing. Had this automobile backed on to a child passing along the sidewalk, the owner of the machine would no doubt have been held liable in damages. It was the duty of a person moving a machine out of the garage on to the street under these conditions to keep a lookout for the traveling public who had the same rights in this street as respondent.

The assertion that respondent had the same right in the street as the street-car company is clearly within the law. That assertion, however, must be considered as an abstract proposition of law. *The rights are equal, but they are to be measured by the manner in which they are exercised.* A street-car company can only exercise its right to occupy the street by keeping on the track. On the other hand, an auto may be so operated that it can occupy any part of the street with safety. In other words, it can move from one part of the street to the other and is not confined to a track. So with pedestrians. Their place is on the sidewalk except when crossing from one side of the street to the other, and then the rights of the pedestrian are not as clear and indisputable when he is crossing in the middle of the block as when he is crossing at a street crossing. This was not a street crossing and it was not a place where the street-car company was required or expected to slow down or stop. To instruct the jury under these circumstances that the driver of this automobile, Charles Palmer, "was not under the duty to look and listen before" backing this automobile into the street was clearly erroneous and misleading to the jury. There can be no question but that he had a right to back the automobile into the street, but he must exercise that right with diligence and care, and there was no diligence and no care in backing it into the street without looking or listening.

We shall not deal with the other instructions separately, and in relation to them will only observe that as the record appears before us, this is a case in which the court should properly have given an instruction as requested on the law

of concurrent negligence, as this is a case to which that rule of law would seem to be peculiarly applicable; at least, the jury ought to be instructed as to the rule of law applicable in cases of concurrent negligence and advised as to what the law deems concurrent acts of negligence. (*McCormick v. Ottumwa Ry. & Light Co.*, 146 Iowa, 119, 124 N. W. 889.)

The judgment must be reversed, and it is so ordered, and a new trial is granted. Costs awarded in favor of appellant.

Sullivan and Stewart, JJ., concur.